GOODSELL
v.
STINSON.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Rariden*, for the plaintiff.

*J. S. Newman*, for the defendant.

---

GOODSELL and Others *v.* STINSON.

A mortgage of real estate to *A.* was, in his absence and without his knowledge, signed and sealed by *B.*, and delivered by him to the recorder of the proper county to be recorded; and *C.*, afterwards, before the mortgagee had assented to the mortgage, obtained a judgment against the mortgagor. *Held*, that the judgment was entitled to the preference.

ERROR to the *Vanderburgh* Circuit Court.

<span>Thursday, July 17.</span>

SULLIVAN, J.—*Stinson*, a judgment-creditor of *Frederick E. Goodsell*, filed a bill in chancery to set aside, as fraudulent and void, a mortgage executed by *F. E. Goodsell* and wife to *Peter Goodsell*. The bill alleges that on the 1st of *October*, 1840, the complainant recovered against *F. E. Goodsell* and one *Shanklin* a judgment for the sum of 2,712 dollars and 29 cents, the greater part of which is still due and unpaid; that on or about the date of the judgment, *F. E. Goodsell*, who resided at *Evansville* in this state, conveyed by deed of mortgage to his father, *Peter Goodsell*, who resided in the state of *New York*, all his real and personal estate, falsely pretending that he was indebted to his father in a large sum of money, &c.; that the deed was never delivered to *Peter Goodsell* nor to any person for him, but was fraudulently delivered by the said *F. E. Goodsell* to the recorder of *Vanderburgh* county to be recorded, and was by him recorded without the request or assent of said *Peter;* that in consequence of said recorded mortgage, the judgment of the complainant is inoperative, &c. The bill prays that the mortgage may be declared null and void, and that the property therein named be subject to the complainant's judgment.

The answer of *F. E. Goodsell* admits the judgment as stated in the bill, and that the respondent executed the mortgage to *Peter Goodsell* in the absence of the latter, but denies the fraud. He says that he was justly indebted to *Peter Goodsell* in a large sum of money, amounting to about 1,800 dollars, for money lent and advanced to him before that time; and that *Peter Goodsell* had incurred certain liabilities for him in the city of *New York* to a large amount; and that the mortgage was made in compliance with a previous agreement with said *Peter;* . and without any fraudulent intent whatever. He admits that on or about the 9th of *September,* 1840, he executed the mortgage and delivered it himself to the recorder of *Vanderburgh* county to be recorded, believing that to be a sufficient delivery to the grantee.

*Peter Goodsell,* in his answer, denies that the mortgage was made with a fraudulent intent. He admits that at the time it was made he resided in the state of *New York,* and that *Frederick,* the mortgagor, resided in the state of *Indiana.* He says that his son *Frederick* was indebted to him in the sum of 1,500 dollars, money previously loaned to him; and that he had also incurred liabilities for *Frederick,* as his indorser, to the amount of about 800 dollars; and that the mortgage was made by *Frederick,* and delivered to be recorded, in pursuance of a previous request from him to secure said debt, and to indemnify him against said indorsements. He states that in *July,* 1840, *Frederick* requested him by letter to send to him as soon as possible a statement of the amount he owed him, and saying "that he would make a mortgage to him to secure him in case of accidents." Respondent immediately sent a statement to *Frederick* as requested, and in *November* following he was informed by *Frederick* that the mortgage was made and recorded. He further states that on the 5th of *February,* 1841, he wrote to *Frederick* enclosing a letter of attorney to *Amos Clark* of *Evansville,* constituting him his attorney, and giving him, as he believes, full power to act for him in all his business, and directed *Frederick* to deliver the letter of attorney to *Clark;* that he was afterwards informed by *Frederick* that he had received the letter of attorney, and he supposes that it is with the mortgage in the possession of *Clark,*

but has no evidence from *Clark* of either being in his possession.

The deposition of *Frederick E. Goodsell* was taken and read by consent of parties. In his deposition he repeats what is stated in his answer relative to the execution of the mortgage, and leaving it at the recorder's office to be recorded. He furthermore states that he had nothing more to do with it afterwards; that it was in the possession of *Amos Clark* some two or three months after its execution, since which time he had not seen it.

The Circuit Court was of opinion that the deed was void and decreed accordingly.

We do not think the facts of the case will warrant the conclusion, that the mortgage was made with a design to delay or defraud the creditors of the mortgagor. We therefore direct our attention to the question upon which we think the case must turn, and that is, whether there were a delivery and acceptance of the deed previously to the rendition of the judgment in favour of the complainant against *Frederick E. Goodsell.* The deed was left with the recorder on the 9th of *September*, 1840, to be recorded. The judgment in favour of the complainant was rendered on the 1st of *October*, 1840. In *November* following, *Peter Goodsell* was informed by *Frederick* that the mortgage was made and recorded, and on the 5th of *February*, 1841, *Peter Goodsell* appointed *Amos Clark* his attorney in fact to transact and attend to his business at *Evansville* for him.

The delivery of a deed is an essential requisite to its validity, and it is from the delivery that the deed takes effect. A deed may be delivered to a third person even a stranger, for the benefit of the grantee, and if he afterwards assent to the act, the deed will take effect from the date of its delivery, unless the rights of third persons should be affected by it. In that event the doctrine of relation would not apply, for it is a general rule that it shall not be permitted to apply so as to do wrong to strangers; as between the parties to the deed, it may be adopted for the advancement of justice. *Case* v. *De Goes et al.*, 3 Caines, 261.—*Jackson d. Griswold* v. *Bard*, 4 J. R. 230.—*Menvil's* Case, 13 Coke R. 19. (1.) It is contended in this case, that the deed was delivered

when it was recorded.˙ The weight of authority is other-wise. In *Jackson* v. *Phipps*, 12 J. R. 418, it was decided that where a debtor, living in *New York*, made to his credi-tor, living in *Massachusetts*, a deed for his farm as security for a debt, and left it at the proper office to be recorded, but that neither the grantee nor any person on his behalf was present to receive it, and the grantee soon after died, where-upon the deed was sent to his heir, there was no delivery. To the same effect is the case of *Jackson* v. *Richards*, 6 Cowen, 617. (In that case, it appears that a deed had been made to a grantee, but had not been delivered to, nor received by her; that it was executed and recorded without her knowledge or consent. ( The Court said that the deed acquired no efficacy from the circumstance of its being re-corded. There was nothing in that act equivalent to a deli-very. Any instrument, says the Court, which upon the face of it is regular, and purports to be a deed or conveyance, may be recorded. But if it is not in truth what it purports to be, it will not be aided by being engrossed by a recording clerk, and put upon the files of a public office.) *Vide*, also, *Maynard* v. *Maynard et al.*, 10 Mass. R. 456. ˙We do not mean to be understood as saying, that the subsequent assent of a grantee to the delivery of a deed, made to a recording officer to be recorded, would not be a valid delivery as between the parties; but the assent must be established by other proof than the mere fact that the deed was recorded.

We now proceed to inquire, whether the subsequent assent of *Peter Goodsell* to the act of the grantor can be considered as an acceptance of the deed, so as to relate back to the time it was deposited with the recorder to be record-ed. We have already said that the doctrine of relation can-not be admitted to the injury of third persons. It is a fiction of law, and the rights of third persons are not to be destroy-ed by fictions. The complainant in this case is a judgment-creditor, and has, by the operation of his judgment, a lien upon the land described in the mortgage, unless the judg-ment-debtor had parted with the land previously to the rendition of the judgment. Leaving the deed to be recorded was not, as we have shown, equivalent to a delivery. The only acts of *Peter Goodsell*, which we regard as evidence of

his assent to the deed, were his letter to *F. E. Goodsell*, and his power of attorney of the 5th of *February*, 1841, authorizing *Amos Clark* to receive the deed which had been made and put upon record for his benefit. There was no valid delivery, therefore, until the assent of *Peter Goodsell* was given. Previously, the complainant's lien had attached, for, at the rendition of the judgment, no assent to the delivery had been given by the grantee, and the title was still in the grantor. The case of *Samson* v. *Thornton*, 3 Met. 275, bears strongly on this point. In that case, an agreement was made for the sale of land at a certain sum per rod, and a deed was made out, but not acknowledged and delivered, because the land had not been measured. The owner afterwards acknowledged the deed, and sent it to the registry without the knowledge of the grantee. The Court held that the grantee had no title as against a creditor of the grantor, who had attached the land before the grantee had accepted the deed, and had afterwards levied an execution upon it. In *Hedge et al.* v. *Drew*, 12 Pick. 141, a deed which was delivered to the register of deeds by the grantor for the use of the grantee, to which the latter subsequently assented, was held to prevail against an attachment by a creditor of the grantor, made after such assent. But it is plainly inferible from the language of the Court, that if the attachment had been laid upon the land before the assent was given, the creditor would have held the land.

Our conclusion is, that on the 1st of *October*, 1840, the title to the real estate described in the mortgage was in *Frederick E. Goodsell*, and that the judgment of the complainant is a lien upon it. Upon the personal property mentioned in the deed, the judgment is no lien. As to such property, the lien attaches from the time that the *fi. fa.*, or other writ of execution, is delivered to the sheriff to be executed.

We think the Circuit Court erred in setting aside the mortgage-deed as fraudulent and void. As between the parties, and as to all the world except those having a prior right, the deed is valid. The decree should have given a priority only to the complainant's judgment, and let the mortgage stand, for it may be that the security is sufficient for both creditors.

Doe
v.
Abernathy.

*The Court* reversed the decree and rendered a decree for the complainant conformably to the above opinion.

*C. I. Battell* and *S. Yandes*, for the plaintiffs.

*C. Baker*, for the defendant.

(1) There may be such a delivery of a deed in the grantee's absence, as to entitle it to a preference to one subsequently executed; as where the party seals it, and declares, in the presence of a witness, that he delivers it as his deed, but keeps it in his own possession. *Doe d. Garnons* v. *Knight*, 5 B. & C. 671. That was an ejectment, in which the lessor and defendant claimed under mortgages from the same person, and the lessor's mortgage was preferred as the first, though he did not know of its existence until after the execution of the defendant's, nor until after the death of the mortgagor. The Court there held,

1. That where an instrument is formally sealed and delivered, and there is nothing to qualify the delivery but the keeping the deed in the hands of the executing party, nothing to show he did not intend it to operate immediately, it is a valid and effectual deed, and delivery to the party who is to take by it, or to any person for his use, is not essential.

2. That delivery to a third person, for the use of the party in whose favour a deed is made, where the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery.