Jones, Administrator, *v.* Loveless *et al.* ·

---

No. 10,065.

JONES, ADMINISTRATOR, *v.* LOVELESS ET AL.

DEED.—*Execution of.*—*Delivery an Essential Requisite.*—The delivery of a deed is an indispensable requisite of its due execution; the deed takes effect from its delivery, and though signed, sealed and acknowledged in proper form, if it pass into the grantee's possession without delivery by the grantor, it will not operate, as between the parties thereto, to convey the title to the real estate described therein.

Jones, Administrator, *v.* Loveless *et al.*

SAME.— *Voluntary Unrecorded Deed.—Delivery after Grantor's Death.—Testamentary Disposition.—Rights of Grantor's Creditors.—Relation.*—Where the grantor signs and acknowledges a voluntary deed to his children as grantees, in consideration of natural love and affection, and, without having such deed recorded in the proper recorder's office, seals it up in an envelope and deposits the same with his agent to be delivered to the grantees after his death, and where such deed by its terms is not to take effect until after the grantor's death, the deed is an attempted testamentary disposition of the land described therein, and, if not executed with the legal formalities of a will, is inoperative to pass the title to the land to the grantees. And where the grantor dies insolvent long after he placed such deed in the hands of his agent, the subsequent delivery of the deed will be ineffectual to defeat the rights of the grantor's creditors and administrator to sell the land for the payment of his debts; for the rule is that the doctrine of relation, which alone could give effect to such deed, will not be permitted to apply so as to do wrong or injury to strangers to the deed.

From the Carroll Circuit Court.

*J. L. Miller, M. Jones, F. B. Everett* and *M. W. Miller,* for appellant.

*W. D. Wallace* and *A. A. Rice,* for appellees.

HOWK, J.—On the 24th day of April, 1878, George B. Rash, then the administrator of William Loveless, deceased, filed in the clerk's office of the Tippecanoe Circuit Court his verified petition, wherein he alleged, in substance, that his decedent died intestate; that the personal estate of the decedent, with his real estate previously sold and ordered to be sold, would amount to about the sum of $3,000; that the decedent's debts, so far as they had come to the administrator's knowledge, amounted to about the sum of $8,000, showing an insufficiency of the personal estate, including the lands already sold and ordered to be sold, of about $5,000; that the decedent died on the 4th day of June, 1876, the owner in fee simple of certain real estate, particularly described, in Tippecanoe county, Indiana, containing 150 acres, more or less, of the appraised value of $4,500, as shown by the inventory and appraisement thereof filed with, and made a part of, such petition; that the decedent left surviving him Terressa Loveless,

his widow, Nora Loveless, a posthumous child then eighteen months old, and Frances Hudson, Thomas, John E., Sarah, Edwin V., William W. and Moses B. Loveless, his children, of lawful age, as his only heirs at law; that, on the 8th day of April, 1869, the decedent, William Loveless, then in full life, and Terressa, his wife, executed, and on April 9th, 1869, acknowledged, a deed of conveyance to the above named Frances Hudson, and Thomas, John E., Sarah, Edwin V., William W. and Moses B. Loveless, for the aforesaid 150 acres of real estate, which deed of conveyance was sealed up and left in the hands of said George B. Rash, "he not know-ing what was enclosed until after his appointment as admin-istrator as aforesaid, when it was opened and taken by a por-tion of the grantees therein named, and, on the 24th day of June, 1876, recorded in the records of deeds of Tippecanoe county." A certified copy of such deed was filed with, and made part of, the petition.

The administrator of the decedent further averred that such deed of conveyance was never delivered by the decedent, and was without consideration and void as to his creditors, and the real estate described therein was liable and ought to be sold, under an order of the court, for the payment of the debts of the decedent's estate; that the decedent left no other real estate, except that sold and ordered to be sold, and except, also, the 150 acres of land described in such petition; and that the decedent's estate, after the sale of all such real estate, would be insolvent.

The administrator of the decedent, therefore, prayed that the heirs at law of such decedent might be made defendants to such petition, and notified of its pendency; that the deed of conveyance therein described might be declared void, and the real estate described in such deed might be declared liable and bound for the payment of the debts of the decedent's es-tate, and for an order for the sale of the same accordingly; and that the administrator might be authorized, by an order of the court, to settle such estate as insolvent.

The heirs at law of the decedent, except . is widow Ter-
ressa, and his posthumous child Nora, appeared and filed their
cross complaint, claiming that under the deed of conveyance
mentioned in the administrator's petition, they were the owners
of the real estate therein described in fee simple, and praying
that their title thereto might be forever quieted and set at rest
as against the administrator and creditors of the decedent's
estate, and as against the said Terressa and Nora Loveless.

Issues were joined upon the administrator's. petition and,
also, upon such cross complaint, and were submitted to a jury
for trial, and a verdict was returned in substance as follows:
" We, the jury, find for the petitioner on the issues joined,
and that the personal estate of William Loveless, deceased,
is insufficient to pay the debts of his estate, as stated in the
petition, and that it is necessary to sell the real estate de-
scribed in the petition to pay said debts." Upon the forego-
ing verdict, the court ordered and adjudged that the personal
estate of the decedent was insufficient to pay the debts of his
estate; that he died seized in fee of the real estate described
in his administrator's petition; that the deed of conveyance
set up by the defendants in their cross complaint was invalid,
and that it was necessary to sell such real estate to pay the
decedent's debts, and the administrator was ordered to file an
inventory and appraisement of such real estate, as required
by law.

Afterwards, the cross complainants moved the court for a
new trial as a matter of right under the statute, which mo-
tion was sustained by the court, and to this ruling the admin-
istrator excepted. He then moved the court in writing to
vacate and set aside its order, awarding the cross complain-
ants a new trial as of right, which motion was overruled by
the court, and to this decision the administrator excepted and
filed his bill of exceptions.

And thereafter, on January 15th, 1881, upon the applica-
tion of the cross complainants, the venue of the cause was
changed to the court below.

Before the venue was thus changed, it was suggested to the court that the administrator, George B. Rash, had resigned the duties of his trust, and that the appellant, Mark Jones, had been duly appointed and qualified as administrator *de bonis non* of the decedent's estate; and thereupon it was ordered that the said Mark Jones be substituted as the petitioner and plaintiff in this cause, which was done accordingly.

In the court below, the issues joined were again tried by a jury, and a verdict was returned, finding against the appellant, upon the issues joined on his petition, and finding for the cross complainants, upon the issues joined on their cross complaint, that they were the owners of the real estate in controversy, at the time of the death of their father, William Loveless, deceased. Over sundry motions of the appellant, the court adjudged and decreed, in accordance with the verdict, that the cross complainants were, at the time of the death of appellant's intestate, William Loveless, the owners in fee simple of the real estate in controversy, and that their title to such real estate should be quieted and forever set at rest, etc.

In this court, the appellant first complains of the alleged error of the court in overruling his demurrer to the appellees' cross complaint. All the heirs at law of the appellant's intestate, except his widow and his posthumous child, united in the cross complaint, and alleged therein, that on the 8th day of April, 1869, their father, William Loveless, then in life, was the owner in fee simple and in possession of the real estate in controversy; that, being such owner, the said William Loveless, on the day and year last named, and his wife Terressa, made, signed and acknowledged their warranty deed conveying to the cross complainants the real estate aforesaid, subject to the reservation contained in such deed; that, immediately after thus making, signing and acknowledging such deed, the said William Loveless delivered the same to his nephew, Edward J. Loveless, with directions to hold the

same for the cross complainants, the grantees therein, during the lifetime of said William Loveless, and at his death to deliver the same to the cross complainants; that the said Edward J. Loveless accepted such deed and held the same, under the directions aforesaid, until the fall of 1874, when, on account of failing health, he was about to remove to the State of California; that shortly before the departure of Edward J. Loveless for California, the said William Loveless removed the said deed from the former's possession, with his consent, and placed the same in the hands of George B. Rash to be held by him for the cross complainants, during the lifetime of said William Loveless, and at his death to be delivered by him to the cross complainants; that said Rash accepted such deed, for the uses and purposes aforesaid, and held the same for the cross complainants from that time forward, without interruption, until a short time after the death of William Loveless, on the 4th day of June, 1876, when the said Rash delivered the same to and for the cross complainants, and that afterwards, on the 24th day of June, 1876, the cross complainants caused such deed to be recorded in the recorder's office of Tippecanoe county.

And the cross complainants further alleged that the said William Loveless died intestate on the day and year aforesaid, leaving his widow Terressa, his posthumous child Nora, now an infant of two years, and the cross complainants, all of full age, as his heirs at law; that, by reason of the facts aforesaid, the cross complainants were the sole and exclusive owners of the real estate in controversy; that, notwithstanding such facts, the administrator of the estate of William Loveless, deceased, was then claiming that such real estate was liable to be made assets of the decedent's estate, and, to that end, was subject to be sold for the payment of the decedent's debts.

Wherefore the cross complainants prayed that their title to the real estate in controversy might be forever quieted and set at rest, and that they might be adjudged to be the owners

thereof in fee simple, free from all demands of the creditors of the decedent's estate, and that they might have all other proper relief.

The deed referred to, as well in the administrator's petition as in the appellees' cross complaint, was a deed of general warranty under the statute of this State. It bore date on the 8th day of April, 1869, and was acknowledged by the grantors before a notary public on April 9th, 1869; and the consideration expressed therein was "natural love and affection, and the reservations hereinafter made, and for one dollar." The reservations referred to were thus expressed in the deed: "Saving and reserving to the said William Loveless the right to hold and use and dispose of the rents and profits of said real estate during the term of the life of said William, the grantor, in such manner as he, said William, deems proper, the said William to pay taxes during said life-estate."

The questions presented for our decision by the alleged error of the court in overruling the appellant's demurrer to appellees' cross complaint, may be thus stated: Do the facts stated in such cross complaint show a cause of action in favor of the appellees as the heirs at law of William Loveless, deceased, as against the creditors of such decedent? Or, in other words, did the voluntary deed of William Loveless to his children, the appellees, upon the facts alleged in their cross complaint, operate to convey to them the real estate in controversy, discharged and freed from the grantor's debts and the claims of his creditors? Do the facts stated show that the deed described in the petition and cross complaint was ever delivered by the grantor William Loveless, or by his authority, to the grantees named therein? If such delivery is shown by the facts alleged, when should or did the deed take effect and become operative as between the grantees and the creditors of the grantor, William Loveless? These are troublesome questions, but, upon the answers which must be given to them, depends the proper decision of this case.

Do the facts stated by the appellees show a delivery of the deed by the grantor William Loveless? This is the first question we are required to consider and decide. It is elementary law that a deed is not executed until it is delivered by the grantor. In *Tharp* v. *Jarrell*, 66 Ind. 52, it was said by this court: "It needs hardly to be said that the delivery of a deed, by the grantor to the grantee, is an essential part of its execution. Without such delivery, a deed of conveyance, though signed, acknowledged and recorded, is wholly inoperative, and passes no title whatever to the premises therein described." There is some contrariety of opinion in the adjudged cases in regard to what acts or words will constitute the delivery of a deed by the grantor to the grantee; but all the cases and all the law-writers, so far as we are advised, agree that the delivery, actual or presumptive, of a deed by the grantor to the grantee, with the intent thereby to give effect to such deed, is indispensably necessary to its validity. 3 Washb. Real Prop. (4th ed.) p. 286. It has been held that "Where the deed to a child is absolute in form and beneficial in effect, and the grantor and father voluntarily causes the same to be recorded, this is in law a sufficient delivery to the infant, and the title to the lands conveyed will pass thereby." *Cecil* v. *Beaver*, 28 Iowa, 241. But even in such a case, it was held by this court, in *Vaughan* v. *Godman*, 94 Ind. 191, that it was competent for the grantor and father to controvert the implied, constructive or presumptive delivery of the deed to his infant child, growing out of the facts of his causing the deed to be recorded and its beneficial effect, by alleging and proving that he had never, in fact, delivered such deed to his infant child, with the intent thereby to give it effect as a conveyance to her of the premises described therein. *Fitzgerald* v. *Goff*, ante, p. 28.

It is manifest, however, that the doctrine declared in *Cecil* v. *Beaver, supra,* can have no application to the case in hand. For here, as shown by the averments of appellees' cross complaint, the grantor and father never caused the deed to be re-

corded, and his children, the grantees, were alleged to be of full age.

We are of opinion that the facts stated by the appellees in their cross complaint show conclusively that their father and grantor, William Loveless, never, in fact, delivered to them the deed therein described, and that the alleged delivery of such deed, after the death of the grantor, was wholly unauthorized and inoperative to give effect and validity to the conveyance. It was alleged in the cross complaint that the grantor William Loveless, in the fall of 1874, placed the deed in the hands of George B. Rash, to be held by him for the cross complainants during the grantor's lifetime, and at his death to be delivered by Rash to the grantees therein; that Rash accepted such deed, and held the same for the cross complainants from that time forward until shortly after the death of the grantor; and that Rash then delivered the deed to the cross complainants, the grantees therein. These facts show that William Loveless verbally authorized Rash, as his agent, to do the things mentioned. Upon the death of Loveless the authority was thereby revoked, and Rash ceased at once to be the decedent's agent for any purpose, and therefore could not, for the deceased grantor, deliver the deed. Besides, the deed upon its face was not to take effect until after the grantor's death. It was an attempted testamentary disposition of the grantor's land, and was not executed with the requisite formalities of a will, and was, therefore, inoperative to pass the title to such land. Under the averments of the cross complaint, it seems to us, that William Loveless, notwithstanding such deed, died seized of the land in controversy; that the appellees took their title to such land, not under the deed, but by descent; and that they were not entitled to have such title quieted as against the administrator of such decedent. Our conclusion is, therefore, that the court clearly erred in overruling the demurrer to appellees' cross complaint.

This conclusion renders it unnecessary for us to consider any

of the other errors assigned, or to decide any of the questions thereby presented.   In view, however, of the fact that the views we have expressed may seem to be in conflict with many of the adjudged cases elsewhere, it may not be improper for us to notice briefly some of the peculiar features of the case in hand, as shown by the record.   We have already seen that the deed, under which appellees claim, was executed more than seven years prior to the death of the grantor, William Loveless, and that such deed was never recorded, by his procurement or otherwise, in the recorder's office of the proper county, until about three weeks after his death.   The reservations in the deed show very clearly that the grantor did not intend it to take effect or become operative for any purpose during his natural life.   It is apparent, also, that the grantor had control of the deed at all times, and, long after its execution, claimed and exercised the right and power to take and remove it from the possession of the first depositary, and place it in the custody of another person.   The last depositary, George B. Rash, was a witness for the administrator on the trial, and testified, substantially, as follows : Several years before William Loveless died he brought a sealed package and handed it to me, and said, "take care of this for me." (I have a safe, and the whole neighborhood makes a depository of it.)  It was a yellow envelope, legal size, sealed up and endorsed "William Loveless' papers." He gave me no directions at all about the package, only left it to be taken care of for him; that is all he said to me.   He never told me what was in the envelope; and I didn't know at the time of his death what it contained. After I became administrator of his estate I opened the envelope and found the deed in it, and a day or two afterwards I handed it to the grantees.

The record shows that between the date of the deed and the date of its assumed delivery, after the death of the grantor, he became and died insolvent, and the rights of his general creditors, and of his administrator as their representative, in-

tervened and attached to the real estate in controversy. Manifestly, the deed of such real estate, assuming that the last depositary had the right, after the grantor's death, to hand it to the grantees, could only be upheld by invoking the aid of the doctrine of relation. It has been held, however, and correctly so, we think, that the doctrine of relation shall not be suffered to prevail to the wrong or injury of intervening creditors. Thus, in *Goodsell* v. *Stinson,* 7 Blackf. 437, this court said : " The delivery of a deed is an essential requisite to its validity, and it is from the delivery that the deed takes effect. A deed may be delivered to a third person even a stranger, for the benefit of the grantee, and if he afterwards assent to the act, the deed will take effect from the date of its delivery, unless the rights of third persons should be affected by it. In that event the doctrine of relation would not apply, for it is a general rule that it shall not be permitted to apply so as to do wrong to strangers ; as between the parties to the deed, it may be adopted for the advancement of justice." The case cited was approved and followed, upon the point under consideration, in *Woodbury* v. *Fisher,* 20 Ind. 387.

Where an unrecorded conveyance of real estate is purely voluntary, and the grantor dies insolvent before the delivery of the conveyance to the grantees therein named, we are firmly of the opinion that the doctrine of relation can not be invoked or permitted to give validity to the conveyance, to the prejudice and injury of the administrator and creditors of the deceased grantor.

The judgment is reversed, with costs, and the cause is remanded, with instructions to sustain the demurrer to the cross complaint, and for further proceedings not inconsistent with this opinion.

Filed Nov. 25, 1884. Petition for a rehearing overruled Jan. 28, 1885.