Owen *et al. v.* Williams.

No. 12,956.

## OWEN ET AL. *v.* WILLIAMS.

DEED.—*Delivery After Grantor's Death.—Doctrine of Relation.—Testamentary Disposition.*—A short time before his death, a father delivered to one of his sons a package of deeds to his children, which he had signed and acknowledged a year previously, and stated that the deeds belonged to the children, and directed his son to deliver them after his death. With the grantor's consent, the son deposited the package in a bank for safe keeping. When the grantor died, the deeds were delivered and recorded. Suit by one of the grantees to quiet his title against the claim of the judgment creditors of another of the grantor's sons that the deeds are ineffectual. The plaintiff's deed conveyed to him, "after my decease, and not before," certain land for the expressed consideration of one dollar. Between the date of the deed and the date of its delivery to the plaintiff, the rights of no stranger, claiming under the grantor, intervened.

*Held,* that the delivery of the deed to plaintiff related back to the date of the delivery of all the deeds to his brother, and took effect as of that date.

*Held,* also, that the phrase "after my decease, and not before," did not make the deed testamentary in character, but operated merely to show that the grantee's use and enjoyment of the land would not begin under the deed until after the grantor's death.

From the Posey Circuit Court.

*E. D. Owen,* for appellants.

*W. P. Edson,* for appellee.

HOWK, J.—This suit was commenced in the court below on the 12th day of September, 1885, by appellee, Williams, as sole plaintiff, against the appellants, Eugene F. and Horace P. Owen, and a number of other persons, as defendants.

The object of plaintiff's suit was to obtain a decree of the court forever quieting and setting at rest his title to the real estate described in his complaint, as against all claims, demands and alleged liens thereon of the defendants, and each of them.

Appellants answered by a general denial of the complaint,

and the other defendants made default.    The cause was submitted to the court for final hearing, and a finding was made in favor of plaintiff, and, over appellants' motion for a new trial or hearing, the court rendered a final judgment and decree in favor of plaintiff, quieting his title as prayed for in his complaint herein.

Defendants Eugene F. and Horace P. Owen have alone appealed to this court, and have here assigned error upon the overruling of their motion for a new trial.

The cause is presented and discussed here solely upon the evidence, which is properly in the record.    It is necessary, we think, to a proper understanding of the questions presented for decision, and ably argued by the learned counsel, as well of plaintiff as of defendants, that we should first give a summary, at least, of all the evidence given in the cause.

Plaintiff first offered in evidence a written instrument, in the form of a deed, signed by William Williams and Irenia, his wife, dated June 16th, 1884, and purporting to convey to plaintiff the lands in controversy in this action, to the admission of which instrument in evidence appellants objected " for the reason that said instrument was inoperative to convey real estate, being testamentary in its character, and not attested according to law or probated." These objections were overruled by the court, and such written instrument was admitted in evidence, and to this ruling appellants at the time excepted.    Such instrument was a warranty deed in form, whereby " William Williams and Irenia Williams, his wife, of Posey county, in the State of Indiana, convey and warrant to Thomas Jefferson Williams (plaintiff herein), after my decease, and not before, of Posey county, in the State of Indiana, for the sum of one dollar, the following real estate," etc.    (Description omitted.)    This written instrument, in form a deed, was signed and sealed by William Williams and Irenia Williams, and was acknowledged by them before a notary public of Posey county, on the 16th

day of June, 1884; and afterwards, on July 28th, 1885, it was recorded in the recorder's office of such county.

"And it was admitted in open court, that the said William Williams was the owner of the real estate described in said deed during his lifetime at and before the date of the deed, and at the time of his death, unless the same was divested by said instrument; that defendants had, before the commencement of this action, obtained judgments against one Zephaniah Williams, and had executions issued thereon and levied upon the interest of said Zephaniah Williams in the said real estate in the said deed described; and that the sheriff of said county had advertised the same for sale under said executions."

Plaintiff rested his case on the foregoing evidence. Defendants first read in evidence the last will and testament of William Williams, deceased, and the probate thereof. The will was dated June 26th, 1884, and the probate thereof was made by and before the clerk of the court below, on July 9th, 1885. "And it was in open court admitted that the said William Williams was the same person who had signed said deed read by plaintiff, and that Zephaniah Williams and the plaintiff, Thomas J. Williams, were two of the sons of said William Williams."

And Martin Williams, a witness for defendants, then testified as follows: "I am a son of William Williams. Before his death, and just before he went to Evansville to be operated upon surgically, he gave me a large bundle of papers, and among the papers was the deed in this case, and other deeds to his children, in a sealed envelope, and he said: 'Here are the deeds belonging to you children; take care of them, and after my death deliver them to the children.' He afterwards said to me in Evansville, at the hospital: 'I want you to see that the children get the deeds, after my death.' The deeds were not to be delivered to the children until after my father's death. The papers my father gave me were his papers. The sealed envelope, with the deeds in, was among

the other papers, but the deeds were done up to themselves, in a separate sealed envelope. I said to him: 'These papers will not be any safer in my house than they would be in yours; hadn't I better take them to Bozeman's Bank to be put in his vault?' He gave his consent to that, and I took the papers to Bozeman's Bank to be put in the vault. I did not say anything to Bozeman then; when I took the papers in, Bozeman was not there, and I gave the papers to his clerk, George Waters. I do not remember what I said to Waters. I deposited the whole bundle of papers together, in the bank, as my father's papers. I am interested in the result of this suit, in having plaintiff win the case. My father went to Evansville the day after he gave me the bundle of papers, and died in Evansville."

Cross-examined by plaintiff, the witness testified: " The package containing the deeds was done up separate from my father's other papers; the deeds were in an envelope to themselves and sealed up; the deed to the plaintiff in this case was among them. I wouldn't be certain about the exact language, but I think that is about what he said; I think he used the expression, ' belonging to you children ;' that was the substance of it. The talk at the hospital was a day or two before his death."

On his re-direct examination by defendants, witness said: " The bundle of my father's papers was in several separate bundles and all together, and this envelope with the deeds was sealed up and with his other papers. By what my father said to me, the deeds were not to be delivered to the children till after his death."

Virgil P. Bozeman, a witness for defendants, testified as follows: " I live at Poseyville, and have a bank and vault and safe. On the 10th day of June, 1885, Martin Williams brought some papers to the bank, and gave them to George Waters. He said they were some papers his father wanted taken care of; I do not recollect his language. From what Martin Williams said, the papers were his father's, and were

to be left at the bank for safe keeping. There was a considerable bundle of papers, and among them was a sealed envelope; I didn't know then what it contained, but now know it was some deeds. He said the papers were to be delivered to his father's children; this, I think, he said to me afterwards; I am not sure whether he said that when he brought the papers or afterwards."

On cross-examination by plaintiff, witness said : "It was a pretty good bundle of papers. I don't remember being present when more than one bundle was brought by Martin. Don't know whether there were notes in the bundle—can't say."

Re-examined by defendants, witness said: "There was writing on the outside of envelope containing deeds." Defendants then asked witness: "What was written on the outside of the envelope?" Plaintiff objected to the question, when defendants offered to prove by the answer of the witness that there was on such envelope the following endorsement, to wit: "Deeds of William Williams, to be delivered after my death." The court sustained plaintiff's objection and excluded the offered evidence, and to this ruling defendants at the time excepted.

Joseph Leonard, a witness for defendants, testified as follows: "I am a notary public at Poseyville. I took the acknowledgment of the deed in question in this case on the 16th day of June, 1884. At the time the deeds were signed and acknowledged Mr. Williams said he did not intend these deeds to go to the children, or to be delivered to them, until after his death ; that he wanted them to have the land after his death, but not before, and that was the reason he drew the deeds that way." And here the defendants rested their case.

George Waters, a witness for plaintiff, then testified as follows: "I am cashier at Mr. Bozeman's bank. Mr. Martin Williams, on the 10th day of June, 1885, brought a bunch of papers to the bank and said they were papers belonging to

his father, William Williams, and that no one was to be allowed to touch them until his father's death, if his father should die at Evansville. The bundle of papers was done up in a big piece of brown paper, and among the papers was the sealed envelope which contained the deeds. I do not know what has become of the envelope. I looked for it when you sent me word, just before getting on the train at Poseyville, but could not find it. I found one or two of the deeds, not delivered yet, in another envelope—this one, in my hand—but the original envelope is gone—at least, I could not find it. I can't say whether Bozeman was in the bank when the papers were brought in."

Cross-examined by defendants, witness said : " The papers were all left in the bank as the papers of William Williams, and the sealed envelope was among them. The instruction was that Mr. Williams was going to Evansville, and that no one was allowed to touch any of the papers unless Mr. Williams died or until his death. There was an endorsement on the envelope containing the deeds, in the handwriting of William Williams. I searched for the envelope through the papers at the bank, and through Mr. Williams' papers, and about where I thought of, and could not find it. I don't know where it is."

Question by defendants : " What was it written on the envelope in Mr. Williams' handwriting ? " To this question plaintiff objected, and the court sustained the objection, and to this decision defendants at the time excepted. "And this was all the evidence given in the cause."

Upon the evidence in this case, as we have given it, defendants' counsel earnestly contends in his able and exhaustive brief, that the written instrument, signed and acknowledged by William Williams and his wife, and under which plaintiff claimed title to the lands described in his complaint, though a warranty deed in form, was testamentary in its character, and was void as a will, because it had not been attested by two or more subscribing witnesses ; or (2) that if such in-

strument be a deed, its execution had never been consummated by the delivery thereof by the grantors to the plaintiff as grantee.

It is claimed by counsel that both these points are settled in favor of the defendants herein by the decision of this court in *Jones* v. *Loveless,* 99 Ind. 317. We are of opinion, however, that defendants' learned counsel, in asserting this claim, has wholly misapprehended either the points in judgment in the case cited, or the force and effect of the facts shown by the evidence in the case in hand. It is apparent from the opinion of the court in the case cited that the facts of that case in many material respects were totally unlike the facts of the case we are now considering.

In *Jones* v. *Loveless, supra,* the controversy was between the administrator of the grantor, who had died insolvent, and his children and heirs at law named as grantees in the deed, which had been signed and acknowledged more than seven years prior to the death of the grantor, and had never been recorded by his procurement or otherwise in the recorder's office of the proper county until about three weeks after the grantor's death. In that deed the consideration expressed was " natural love and affection, and the reservations hereinafter made, and for one dollar." The reservations referred to were thus expressed : " Saving and reserving to the said William Loveless the right to hold and use and dispose of the rents and profits of said real estate during the term of the life of said William, the grantor, in such manner as he, said William, deems proper, the said William to pay taxes during said life-estate."

In commenting upon the facts of that case the court there said : " The reservations in the deed show very clearly that the grantor did not intend it to take effect or become operative for any purpose during his natural life. It is apparent, also, that the grantor had control of the deed at all times, and, long after its execution, claimed and exercised the right and power to take and remove it from the possession of the first

depositary, and place it in the custody of another person. The last depositary, George B. Rash, was a witness for the administrator on the trial, and testified, substantially, as follows: Several years before William Loveless died he brought a sealed package and handed it to me, and said, ' take care of this for me.' (I have a safe, and the whole neighborhood makes a depository of it.) It was a yellow envelope, legal size, sealed up and endorsed ' William Loveless' papers.' He gave me no directions at all about the package, only left it to be taken care of for him; that is all he said to me. He never told me what was in the envelope; and I didn't know at the time of his death what it contained. After I became administrator of his estate I opened the envelope and found the deed in it, and a day or two afterwards I handed it to the grantees. The record shows that between the date of the deed and the date of its assumed delivery, after the death of the grantor, he became and died insolvent, and the rights of his general creditors, and of his administrator as their representative, intervened and attached to the real estate in controversy. Manifestly, the deed of such real estate, assuming that the last depositary had the right, after the grantor's death, to hand it to the grantees, could only be upheld by invoking the aid of the doctrine of relation. It has been held, however, and correctly so, we think, that the doctrine of relation shall not be suffered to prevail to the wrong or injury of intervening creditors." *Goodsell* v. *Stinson,* 7 Blackf. 437 ; *Woodbury* v. *Fisher,* 20 Ind. 387 (83 Am. Dec. 325.)

We have quoted more liberally from our opinion in *Jones* v. *Loveless, supra,* than we otherwise would have done, for two reasons, namely: 1st. Because defendants' counsel has rested his claim for the reversal of the judgment herein largely upon the authority of the case cited ; and 2d. That we may show by contrast, in this opinion, the very marked difference, as we think, between that case and the case under consideration as made by the evidence. In the first place, it will be observed that this is not a suit where the rights of

creditors have intervened between the date of the deed and the date of its delivery, under which the plaintiff claims title to the lands described therein; or where the administrator of the estate of William Williams, deceased, the grantor in such deed, is asking for an order of the court authorizing the sale of such lands to make assets for the payment of such decedent's debts. · In this case, also, it will be observed that, although the deed to plaintiff, and other deeds to other children, were signed and acknowledged by William Williams and his wife, on the 16th day of June, 1884, yet such deeds, including the deed to plaintiff, were not delivered by William Williams to any one until on or just before the 10th day of June, 1885. It is shown by the evidence that William Williams then, just before he went to Evansville to be operated upon surgically, delivered to his son, Martin Williams, among other papers, a sealed envelope containing all such deeds, including the deed to plaintiff, and said at the time of such delivery: "Here are the deeds belonging to you children; take care of them, and, after my death, deliver them to the children." He died about a month after such delivery of the deeds to his son, Martin Williams, in July, 1885, at the hospital in Evansville. A day or two before his death, he said to his son, Martin, at the hospital: "I want you to see that the children get the deeds, after my death." There is nothing in the record of this cause to indicate that, between the date of the deed and the date of its delivery to the plaintiff herein, any stranger acquired any right to, interest in or lien upon the lands described in the deed by, through or under the grantor therein.

We are of opinion, therefore, that the plaintiff's case is one to which, for the advancement of justice, the doctrine of relation must be applied; and, under that doctrine, the delivery of the deed to plaintiff will relate back to the date of the delivery thereof to Martin Williams, for plaintiff's benefit, and the deed will take effect as of that date.· *Goodsell* v. *Stinson, supra.* Under this view of the deed to plain-

tiff, which we think is the correct one, the use of the phrase therein, "after my decease, and not before," did not make the deed testamentary in character, but operated merely to show that the grantee's use and enjoyment of the lands conveyed would not begin, under such deed, until after the grantor's death, and not before. *Spencer* v. *Robbins*, 106 Ind. 580.

We incline to the opinion that, after defendants had proved that there was an endorsement on the sealed envelope containing the deeds in the handwriting of William Williams, and the loss of such envelope, the court below erred in refusing to permit them to prove that such endorsement was in the words following, to wit: "Deeds of William Williams, to be delivered after my death." We do not think, however, that this error is one which ought to reverse the judgment below. The evidence shows, without the slightest conflict therein, that the deeds were not to be delivered until after the death of the grantor, William Williams. The evidence excluded, therefore, was merely cumulative, and would have tended merely to establish a fact already fully established. Besides, in deciding the questions presented in this case, we have considered the fact that William Williams' instructions always were that his deeds to his children should be delivered to them after his death, and not before, as clearly established by the evidence without any room for doubt.

We have found no error in the record of this cause which authorizes or requires the reversal of the judgment.

The judgment is affirmed, with costs.

Filed Feb. 14, 1888; petition for a rehearing overruled March 24, 1888.