## WM. H. H. TUTTLE V. FRANCIS M. CHURCHMAN ET AL.

1. *Deed as Mortgage.*—The doctrine is well settled that a deed, though absolute on its face, will be treated in equity as a mortgage only as to all persons having notice if the purpose of its execution was to secure the payment or discharge of an existing debt or liability.

2. *Possession as Constructive Notice.*—The possession of real estate is constructive notice to all the world of the rights of the party in possession. But there are recognized exceptions to this rule.

3. *Construction of the Statute.*—Section 17, 1 Davis Rev. Stat. 1876, p. 365, concerning such absolute conveyances as are intended to secure a debt requires that actual notice shall be brought home to a purchaser, and not merely the constructive notice resulting from possession as to an actual defeasance. But the statute does not apply where a grantor relies, as he has a right to do, upon a parol promise to re-convey. Such promise may be proved by parol. In such a case possession is not constructive notice to a purchaser of the grantor's right to have the deed treated as a mortgage. And this applies to a purchaser of a judgment, which is a lien on the land, under the view that the deed is absolute.

Filed May 14, 1881.

Appeal from the Marion Superior Court.

D. V. Burns and C. S. Denny, for appellants, explained *Work v. Brayton*, 5 Ind. 396, as to notice by possession, and also on same point *Glidewell v. Spaugh*, 26 Ind. 319, and 63 Ind. 583, considered as overruling *Work v. Brayton*, and cited *Pell v. McElroy*, 36 Cal. 268, on same point; *Flanders v. O'Brien*, 46 Ind. 284; *Busenbork v. Ramsey*, 53 Ind. 499; *Wainwright, Adm'r, v. Flanders*, 64 Ind. 306, distinguished as to purchasers of a judgment, and on this point cited *Orete v. Jennings*, 8 Blkf. 425; *Downer v. Bank*, 39 Vt. 25; *Reynolds v. Harris*, 14 Cal. 667; *Porter v. Liscom*, 22 Cal. 430; *Merrill v. Smither*, 6 Dana, 305; *Lammers v. Goodman*, 69 Ind. 76; also cited *Runyan v. McClellan*, 24 Ind. 165; Jones on Mortgages, §§ 460–462; Wade on Notice, § 203, to the effect that a judgment creditor is not a *purchaser* within the meaning of the

registration acts; *Pell* v. *McElroy, supra,* as to laches in making inquiry, and *Glidewell* v. *Spaugh, supra,* on same point; *Crassen* v. *Swoveland,* explained; *Churchman* v. *Martin,* 54 Ind. 387, as to the construction of the statute in its hearing on parol defeasances; *Wharton* v. *Wilson,* 60 Ind. 599, to the effect that a judgment lien on land constitutes no interest in the land itself; *Flanders* v. *O'Brien, supra,* distinguished.

John S. Tarkington, for appellee, cited 1 R. S. 1876 §1, p. 915. to the effect that a trust, such as necessary to make a deed a mortgage must be in writing, and Id. §2, that an innocent purchaser will be protected; *Irwin* v. *Ivers,* that an express trust cannot be proved by parol; *Thompson* v. *Elliott,* 28 Ind. 55, that a promise to sell at a future time is void; *Barnard* v. *Flinn,* 8 Ind. 209, that an absolute conveyance cannot be changed into a mortgage by parol; *Doe* v. *Brown,* 7 Blackf. 142, as to equitable possession; *Crassen* v. *Swoveland,* 22 Ind. 427; 2 Wash. on Real Prop. *495, §22; *Kerr* v. *Gilmore,* 6 Watts, 405; *Woods* v. *Wallace,* 22 Pa. St. 171; *Kunkle* v. *Wolfersberger,* 6 Watts, 126; *Hennessey* v. *Andrews,* 6 Cush. 170; *Johnston* v. *Glancy,* 4 Blkf. 94; that possession of a grantor is not notice of a defeasance not recorded; *Work* v. *Brayton,* 5 Ind. 399, and 3 Sandf. Ch. 176; *Scott* v. *Gallagher,* 14 S. & R. 389; *Woods* v. *Farmers,* 7 Watts 382; *Newhall* v. *Pierce,* 5 Pick. 495, as to tenancy at sufferance; *McCaw* v. *Burke,* 31 Ind. 56, that even where a conveyance is voluntary, possession is not notice of an equitable title resting in parol in the grantor; *Neal* v. *Neal,* 69 Ind. 419, and *Moore* v. *Higbee,* 45 Ind. 457; *Sands* v. *Thompson,* 43 Ind. 18; *Carlisle* v. *Brennan,* 67 Ind. 12; *Pearson* v. *East,* 36 Ind. 27, as to the bearing of the Statute of Frauds; *Flanders* v. *O'Brien,* 46 Ind. 284; *Busenbark* v. *Ramsey,* 53 Ind. 499; *Wainwright, adm'r,* v. *Flanders,* 64 Ind. 306, as to protection of assignee of specific execution lien from secret trust, and *Parmlee* v. *Doan,* 37 Ind. 482; 54 Ind. 513; 67 Ind. 114; Freeman on Judgments, §428, as to purchaser without notice; *Lammers* v. *Goodeman,* as to limitation of assignee's rights; *Hendrickson's Appeal,* 24 Pa. St. 363, that an assignee of a judgment is not bound by a secret agreement in favor of one not a party to the judgment; Pomeroy on Spec. Performance, §§116, 123; *Eckert* v. *Eckert,* 3 Penn. 332; *Harris* v. *Harris,* 6 Md. 435; *Wheeler* v. *Wheeler,* 3 Conn.

537, that where one holds possession for another no inference of purchase is given by the possession; *Runyan* v. *McClellan*, 24 Ind. 165, distinguished; also, *Orth* v. *Jennings*, 8 Blackf. 425, distinguished; *Bates* v. *Spooner*, 45 Ind. 489, as to difference between actions *in rem* and *in personam* herein; *Supervisors* v. *Mineral Point R. R. Co.*, 24 Wis. 123; *Davenport* v. *Barrett*, 51 Ind. 329, that where a court determines claims hostile to the title of a mortgagor its conclusion is not subject to collateral attack; *Taber* v. *Cin. etc. R. R. Co.*, 15 Ind. 459; 2 R. S. 1876 §3, p. 334, as to relation of debtor and creditor under a mortgage.

Opinion of the court by Mr. Justice Woods.

The appellant, Tuttle, brought an action to quiet the title to real estate against a judgment lien asserted by the appellees, Churchman and Fletcher. The suit was begun in Johnson county where the real estate is situated, and transferred by agreement to the superior court, wherein at special term there was a finding and judgment for the plaintiff which was reversed at general term. This reversal is assigned as error. While some exceptions were saved in reference to the admission of some portions of the evidence, the real dispute is whether the decision and judgment of the court at special term, upon the proofs made, was right. We have, however, examined the evidence carefully, giving especial attention to the portions which were admitted over objection, and think the court committed no error in admitting any part thereof. But whether the court reached the right conclusion upon the whole case, is a question not free from difficulty and involved in some conflict of authority.

The following summary of the facts proven, about which we may say there is little or no dispute, will be sufficient to afford an understanding of the questions presented, and of the conclusions of the court thereon.

On the 26th day of April, 1877, the plaintiff was the owner in fee, and in possession of, a certain tract of land in Johnson county, Indiana, subject to a mortgage to secure the payment of three promissory notes for $1,200 each, executed by the plaintiff as principal debtor, and by Jacob Smock, the father-in-law of the plaintiff, as surety; and said Smock, having paid two of said notes, and being still liable on the third, the plaintiff, on said day, made to

him a deed of said land, absolute on its face, and upon the consid-
eration of $3,750, therein stated to have been paid, but intended
by the parties only as a security against said liability and for the
repayment of the money so paid on said notes. Said deed was duly
recorded on the 28th day of April, 1877, and the title of record
remained in said Jacob Smock until March 1, 1878, when said
Smock reconveyed a part of said land, to-wit, the real estate now
in suit, to the plaintiff, and the remainder thereof, the same being
by the parties treated as a payment of said sums which said Smock
had paid for the plaintiff, he conveyed to his son Jacob F. Smock,
and the third note secured by said mortgage was, on the same day,
taken up, and said Jacob F. and the plaintiff made their note
instead, and executed a mortgage to secure the same, on the whole
of said tract of land which the plaintiff had owned.

The plaintiff did not surrender possession upon the execution
of his said deed to said Jacob Smock, but continued in the actual oc-
cupation of the whole of the land until March 1, 1878, when said
Jacob F. took possession of the portion conveyed to him and has
remained in possession thereof, and the plaintiff has continued to
occupy the land in suit, so reconveyed to him. While Jacob Smock
held the legal title under said deed from the plaintiff, to-wit, on
the 2d day of August, 1877, one Eliza R. Scott (since Espy), caused
to be filed in the office of the clerk of the circuit court of Johnson
county, a duly certified transcript of a judgment which she had re-
covered in the superior court of Marion county against said Jacob
Smock and others in the sum of $3,100, which thereby became
an apparent lien on said land, and thereafter she caused an exe-
cution to issue on said judgment from said court, directed to
the sheriff of Johnson county, who levied the same on said
real estate, and on the 4th day of October, 1877, returned said
writ unsatisfied, but with said levy indorsed thereon as a part
of the return. Afterwards, and after the date of said reconvey-
ance to the plaintiff, to-wit, on June 10, 1879, said Eliza Espy duly
assigned of record her said judgment to the appellees, who took the
same, paying the full amount thereof, in ignorance and without
notice of the fact that said deed from the plaintiff to said Smock
was only a security, or that the plaintiff claimed it to be such, and
in the belief that said judgment was a lien on the land from the
date of the filing of said transcript.

On these facts the appellant claims that Jacob Smock had no interest in the land on which the judgment became a lien which the judgment plaintiff could enforce in preference to the rights of the plaintiff, and that the appellees, by virtue of their purchase of the judgment, acquired no better right or lien than their assignor had ; and that if the latter proposition cannot be maintained, still the plaintiff's continued possession was notice of his rights which precluded the claim of the appellees, that they purchased in good faith. As bearing on these, the counsel on either side have advanced in discussion a number of minor propositions which need not be mentioned now but, if necessary, will be considered in their proper connection, as we proceed. The doctrine is well settled that a deed of realty though absolute on its face, will be treated in equity as a mortgage only, if the purpose of its execution was to secure the payment or discharge of an existing debt or liability. It is clear therefore that as between Tuttle and Smock, and as to all who had notice of the facts, the deed of April 26, 1877, was only a mortgage. It must be conceded too, as a general proposition, that the possession of real estate is constructive notice to all the world, of the rights of the party in possession. There are, however, recognized exceptions to the rule. In *Work* v. *Brayton*, 5 Ind. 396, citing 3 Sandf. (N. Y.) Ch. Rep. 176 ; *Scott* v. *Gallagher*, 14 Serg. & Rawle, 389 ; *Woods* v. *Farmer*, 7 Watts 382 and *Newhall* v. *Pierce*, 5 Pick. 495, it was held that the possession of the vendor who remained in possession after conveying, was notice of his right to a vendor's lien. It was there said that remaining in possession without any contract, so far as appears, authorizing him to do so, he was a mere tenant at sufferance, with the title of such a tenant and no other ; and that the authorities seem sufficiently conclusive on the proposition that " where the deed of the grantor has been put upon record, acknowledging the receipt of the purchase money, he will be estopped from relying on his continuance in possession as notice of a lien for purchase money, as subsequent purchasers are not bound to go beyond the recorded declarations of the parties and inquire into their actual relations." The seventeenth section of the " act concerning real property and the alienation thereof" approved May 6, 1852, 1 Davis' Rev. 1876, p. 365, is as follows :

" Sec. 17. When a deed purports to contain an absolute convey-

ance of any estate in lands, but is made, or intended to be made, defeasible by force of a deed of defeasance, bond or other instrument for that purpose, the original conveyance shall not thereby be defeated or affected, as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded according to law, within ninety days after the date of said deed."

In *Crassan* v. *Swoveland*, 22 Ind. 427, after quoting the section of the statute, the court says: "This statute, it will be seen, requires actual notice to defeat a purchaser, where the defeasance has not been duly recorded. Possession has never been held anything more than constructive notice." Such constructive notice does not come within the statute. This is in accordance with the authorities. Says an elementary writer: "Nor will the continued possession by the grantor of the land, after the making of his deed, be notice of a defeasance held by him, which is not recorded. 1 Wast. on Real Prop., p. 495, sec. 22. The case of *Hennessy* v. *Andrews*, 6 Cush. 170, is directly in point under a statute similar to our own."

It is claimed there is conflict in this respect between these cases and the case of *Glidewell* v. *Spaugh*, 26 Ind. 319. There the vendor did not remain in possession, nor the vendee take it; but immediately upon the execution of the conveyance, a third party, Glidewell, who claimed that the grantee held only in trust for him, took and held the possession, and it was held that "the fact that immediately upon the conveyance of the property to Woehlor, the appellant entered into possession of the same, and continued to hold that possession at the date of the sheriff's sale, was constructive notice to the appellee of Glidewell's right, and put him on inquiry," etc. The cases are plainly distinguishable, and not at all at variance upon the doctrine under consideration.

There is, however, conflict of authority on the subject. See Lead. Cas. in Eq., vol. 2, p. 184; and the case of *Pell* v. *McElroy*, 36 Cal. 268, is pressed upon our attention as unanswerably establishing a contrary doctrine to the one stated *supra*. We do not deem it necessary or profitable to examine the reasoning of the court in that case, or to enter into a review and citation of the cases *pro* and *con*, but content ourselves with saying that the doctrine

already substantially, if not directly, decided by this court in the cases cited, meets our approval and is more in harmony than the contrary view, with the legislative policy of the State on the subject, as manifested in the section of the statute concerning conveyances, which has been quoted.

It may be true, as counsel for the appellant contends, and as declared in the opinion of one of the judges of the superior court, that the subject is not controlled by said seventeenth section of the statute, because " it provides only that when a deed purports to be an absolute conveyance, it shall not be defeated or affected by force of a *deed, bond,* or other *instrument,* unless the same shall have been recorded, etc. Here the plaintiff does not set up or rely on a written evidence of the interest he asserts. His right rests in parol and can be proven only, as the whole case assumes by oral testimony that the deed to Smock was, in fact, intended by the parties as a mortgage. He had the legal right to rest on the oral promise to reconvey. No statute required the transaction to be evidenced by a writing. Not being required to take in writing, the plaintiff can not be charged with negligence in not placing a defeasance on record. The question of registry does not apply to the facts of the case ; and the statute quoted can have no application, inasmuch as it does not inhibit the taking of a parol defeasance, or provide that such a defeasance shall not affect the deed, but simply requires the registration of instruments in writing which are to so operate. The reports are full of cases where the agreement to reconvey has been shown by parol, and in no case within my knowledge has this section of the statute been arrayed against such proof, and the case in the 22d Indiana, *supra,* does not so hold or intimate. An unrecorded written defeasance was there involved, and what was said as to the application of the statute had reference to that fact."

What is here said in reference to the admissibility of the proof of the defeasance is aside from the question, because the proof is always admissible, whether parol or in writing, and whether the writing be recorded or unrecorded. The statute does not exclude the evidence in any case, but only limits its effect to "the maker of the defeasance, his heirs or devisees, or persons having notice thereof, unless the instrument of defeasance shall have been recorded according to law." But if we adopt the constructive notice by reason of

the continued possession of the grantor, after the making of his deed, as applicable to cases wherein the defeasance is provable by parol evidence only, we arrive at the singular and anomalous conclusion that the grantor of land, who takes back written evidence of his reserved right, is in a worse position than the one who reserves the same right but takes no written evidence thereof. The latter could enforce his right against all the world, on the ground of constructive notice inferred from his continued possession, while the former, who has maintained a like possession and has better and indisputable proof of his right, can assert and enforce it against only such as he can prove to have had actual notice thereof. His instrument of defeasance, too, by reason of not having been acknowledged, or having been improperly acknowledged, may have been as incapable of registration as though it had been a parol defeasance only. We cannot consent to adopt a doctrine which would place a careful man in a worse plight than the less careful one; and we, therefore, hold that the fact that Tuttle remained in possession of his land after conveying it away by a deed absolute on its face, under the circumstances stated as proven, was not constructive notice to the appellees of his right to have his said deed treated as a mortgage.

Whether Mrs. Espy, by filing a transcript of her judgment in the office of the clerk of Johnson county, and by causing an execution to be issued and levied, acquired a lien on the land which she could have enforced in preference to the rights of the plaintiff, we need not and do not decide; but the appellees, having purchased the judgment, which, by the records, appeared to have become a lien on the land, and, having expended their money upon the faith of that appearance, did acquire such superior right, and were entitled on the evidence, to a finding and judgment in their favor. Upon this phase of the case, there is no serious dispute, resting, as it does, upon the authority of the following cases: *Flanders* v. *O'Brien*, 46 Ind. 284; *Busenbark* v. *Ramsey*, 53 Ind. 499; *Wainwright* v. *Flanders*, 64 Ind. 306. The judgment of the superior court, at general term, reversing that at the special term, is affirmed with costs.