(Hamilton County, Court of Common Pleas.)

## LOUIS DUHME, Admr. et al v. CHRISTINA MEHNER, et al.

1. M.—a judgment debtor, induces K. to advance money to buy a judgment lien upon her real estate, which her judgment creditor is pressing for payment. K. examines the title, pays the money and becomes the assignee of the judgment lien, in good faith, without knowledge, actual or constructive, that M's grantors have an interest in the real estate. Held: That K., the assignee, is a quasi purchaser; that he has a better title than his assignor had, and that his equity is superior to that of M's grantors.

2. An heir entitled to a share in the distribution of an ancestor's estate, may have, in proper proceedings, a personal judgment, for the amount of his share, upon the default of the administrator to comply with the court's order of distribution; and if the heir be of age and competent to sue in his own behalf, his right of action will be barred by the statute of limitations, six years from the date of such administrator's default.

3. The usual relations and duties existing between such defaulting administrator and the heir, do not give rise to a continuing and subsisting trust.

4. If by deceit or fraud the heir is induced to agree to surrender any rights against the administrator. such heir must bring his action to set aside such agreement within four years after a discovery of such fraud.

---

### BUCHWALTER, J.

This action was originally instituted by the plaintiffs seeking a recovery of their interests in the real estate and personal estate, as heirs at law, of Louis Mehner, deceased.

So much of the action as pertained to the recovery of the real estate involving an issue to set aside deeds executed by the heirs to their mother, Christina Mehner, on the ground of fraud inducing the execution thereof, was by order of the Court separately docketed, and that branch of the case has been heretofore determined by me.

In that branch of the case, the heirs claimed equitable ownership, by reason of fraud on the part of their mother and brother inducing them to convey their interest in their father's real estate to their mother—and claimed that their equity was older and superior to that of Kuhn & Sons.

Kuhn & Sons were assignees of a $20,000.-00 judgment with execution issued on said real estate; that they were bona fide purchasers of the judgment lien, induced to become such at the request of Mrs. Mehner, after careful inquiry and examination of title—The judgment creditor, Mr. Schmidlap, at that time was pressing his claim for collection, and all the usual formalities in the conveyance of title to secure the assignees were observed except that of executing a mortgage, and in lieu thereof the judgment was assigned. I have held that these facts raise an exception to the general rule that "an assignee of a judgment lien gets no better title than his assignor," and that the bona fide assignee who buys the judgment lien at the request of the owner of the real estate, becomes a quasi purchaser, and in this case with an equity and title better than that of the heirs. See Flanders v. O'Brien, 46 Ind. 284; Wainright v. Flanders, 64 Ind. 306; Tuttle v. Churchman et al. 74 Ind. 311; Hendrickson's Appeal 24 Pa. St. 363; Harness Appeal 94 Pa. St. 489; Hulet v. Whipple et al., 58 Barbour 224; Spring v. Short et al., 90. N. Y. 543. In none of these cases however did the judgment debtor join the judgment creditor, as in the case at bar, in soliciting the purchase for the accomodation of the debtor. (In the consideration of this proposition I have not overlooked Strang v. Beach, et al., 11 Ohio St. 283, and cases therein cited.)

The issue now submitted involves that part of the original action wherein the plaintiffs seek to recover their original distributive shares as heirs of the personal property of Louis Mehner, deceased, and to set aside certain receipts given for each respective share of $21,900 each.

On the trial, the sureties, or their heirs, have been given leave to defend in the name of their principal, Christina Mehner, Adm'x. The recovery asked, is against Christina Mehner as administratix. Although she is also a party individually, no recovery is asked against her, as such, in this action.

The plaintiffs, Duhme, administrator of Florence L. Thompson, deceased, and Albert W. Mehner, respectively ask for a decree cancelling the receipt given by Florence L. Thompson in her life time, and by Albert Mehner, Guardian, for the $21,900, and that the administratrix be decreed to pay to each of said plaintiffs the said sum with interest from August 1, 1877, out of the trust funds which they allege to be yet in the hands of Christina Mehner, Adm'x.. This right of recovery is based upon the claim that the administratrix, their mother, and E. L. Mehner, their brother, induced them to believe that it was the wish of their deceased father that the children should convey all their property interests in his estate to their mother; that the daughters in return should receive $20,000 each; that the sons, E. L. Mehner and Albert Mehner, should have the business and the chattel property in the store as carried on by their father, and that upon the death of their mother the said sons

should share all the residue of the property equally.

The co-heir, Josephine Foster, claims that said Christina Mehner, took possession of the property of Louis Mehner deceased, as alleged in the petition, except that she took charge of it with the express condition that she would give to each of the daughters, Florence and Josephine, a home of the value of $20,000, or that sum in cash, and that E. L. Mehner and Albert Mehner should receive the store and business, when twenty-five years of age, and that the remainder of the estate should remain with the title in the name of the mother, until her death, and then be distributed equally among the four children.

She further claims that it was on the express condition aforesaid, made with her mother, that she parted with all of her interest in the distributive share of the estate, to wit: in the sum of $21,900.

She relies on her agreement to receive the home, or twenty thousand dollars, and claims certain real property of the value of ten thousand dollars, as a part performance of that express condition and agreement.

But while she asks equitable relief generally, the plea is to be taken in connection with the equity and title which she sets up in the real estate, and there is no plea on record by Josephine Foster, asking to set aside this distributive receipt for $21,900, and for recovery against her mother, as administratrix in that regard.

The sureties on the bond of Christina Mehner, administratrix, by leave of court have made defense in her name. They admit all matters of record as pleaded by the respective claimants, but deny any fraud inducing the heirs to part with their distributive shares in the estate of their father, and they claim that it was an agreement between such heirs, and the administratrix, that such receipt should be given and be accepted and approved by the Probate Court, which they allege was done, as in full settlement and adjustment of the trust as administratrix, and that receipts were accordingly given in November, 1877, which were approved by the court in December, 1877. They claim that such judgment of the Probate Court, has never been set aside, and remains in full force and effect. They further plead the statute of limitations.

Louis Mehner died January 21st, 1876. The widow was appointed administratrix February 8, 1876, and filed her inventory February 13, 1876. The deeds conveying to the mother, the interest of the heirs then of age, in the real estate, were executed very soon after the death of the father. The receipts in final settlement an distribution were given in November, 1877, each for the sum of $21,900. They were approved with the final account of the administratrix, December, 1877.

Florence L. Thompson, then a married woman, was twenty-two years of age. She died October 4, 1881, leaving an only child, Georgie, one of the plaintiffs in this case,

then a minor, and now in her fifteenth year. Louis Duhme was appointed and qualified as the administrator of Florence Thompson's estate.

Josephine Foster, at the time of giving her receipt, was married to John H. Foster, and of age. Albert Mehner was a minor, and continued as such until May 28, 1882. Each of the receipts was executed by the respective heirs, except Albert's, which was signed by his guardian, E. L. Mehner.

Controversy arises as to what in fact took place at the time of the execution of these receipts, and at the first family conference, when the plan of settlement is said to have been made by L. Mehner and his mother, as to the wish of the father.

The petition, it is to be remembered, claims a different agreement than was set out in the cross-petition of Josephine Foster. By that alleged in the petition, the daughters were to receive only $20,000. By that alleged in the cross petition of Josephine Foster, they were to receive a home of the value of $20,000, or that sum in cash, and also to receive their full distributive share in the residue of the estate, after the brothers had received the store and business at the age of twenty-five.

The testimony of Mr. Von Seggern, the attorney, conforms to the averment as set forth in the petition, as he remembers the statement given to him by those in interest at the time of the execution of the papers. E. L. Mehner, in his testimony says, that, the shares were substantially as set forth in the cross-petition of Josephine Foster. The mother's testimony has not been at all satisfactory, upon either this issue or upon any other issue involved in the case. And, yet, I think every one interested in the case, excuses her on the ground of lack of memory and ill health, mental and physical. It is sufficient to say, that after so many years, to wit: since February, 1877, it is not at all strange that there should be some difference in memory, but it only illustrates the uncertainty which besets the Court in undertaking to make a finding that should disturb deeds and receipts given, to be filed in court as evidence of the adjustment of the family affairs and of the estate of their father; and especially so, when the main statement which is said to have been a misrepresentation and a falsehood, and which induced the agreement of the heirs as to this adjustment, comes from E. L. Mehner.

The petition charges that E. L. Mehner or originated the scheme to defraud his co-heirs, to wit: by enlarging the general statement of the father as to how estates generally so situated, having such members of a family depending on one for bounty, ought to be distributed, into a statement to the co-heirs, that the expressed wish of his father was, that his estate should be distributed substantially as he has testified, and as set out in the cross-petition of Josephine Foster.

To grant the relief which the plaintiffs ask, I would have almost wholly to rely upon the testimony of E. L. Mehner who is

charged with conceiving this fraud upon his co-heirs, and who now, as their witness, testifies to his own fraud, to rely on his testimony, when a like family interest now intervenes, in favor of setting aside that which his personal interest is charged with having invented to first set fraud on foot, and to make, as a result, the sureties on her bond, friends of the father or of the mother, bear the loss.

Is the proof in this case, such as to warrant the Court in making a finding that there was specific fraud practiced upon the heirs? The lack of certainty in the memory of the different persons in interest however, rather indicates to my mind, that, at least as to these distributive shares given twenty-two months after the death of their father, there was not a reliance upon the mis-statement or fraudulent statement of E. L. Mehner, but rather a reliance upon the promise of their mother to answer personally to the heirs in the payment of a certain sum of money to the daughters, or to give them a home, and to give the sons certain property, to-wit: the store and business, and ultimately distribute as the law would authorize what would be in the name of the mother at her death, to each of the four children equally. I believe, that each of the heirs relied upon that promise, and that statement rather, than that they were led to make these receipts by reason of the fraudulent statement of E. L. Mehner, and that the heirs and their mother entrusted their all to E. L. Mehner, not on the representations of their father's plans or wishes, but on account of their own confidence in his ability to carry on business and manage their finances so as to greatly increase their possessions.

I do not find in the surrounding circumstances or in the testimony, of weight and worth, · corroboration of the proof of E. L. Mehner.

If there had been fraud, it is somewhat unreasonable to me that with these direct recollections of what the statement was, as made by E. L. Mehner, and as is purported to have been repeated by the mother to them and repeated by the attorney to them, who is stated to have received the information through E. L. Mehner and the mother, the repeated variations of what the request or wish of the father was, seems to me ought reasonably to have put the heirs upon their inquiry to have ascertained whether the father did make such a specific request or not. The specific and express request or wish which is set out by the one heir is so different from that set out by the others, that any prudent mind would at once have been put on inquiry, whether any such statement was in fact ever made by the father. In other words, the statement purporting to come from the father, is materially contradictory, and one can not sit by until new rights intervene, and innocent persons may thus suffer, and claim, that he or she did not know that the representations were false, if by the ordinary degree of prudence they could have discovered that they were false.

Such opportunity is equivalent to knowledge.

There is no averment in the petition that this alleged false and fraudulent representation was not known by the plaintiffs during the four years preceding the beginning of this action to be false. This action began in July, 1891: An action for fraud must be brought within four years after the fraud is discovered.—That is held in 46 Ohio St., Douglass v. Corry, Ex'r. The petition herein seems to have been drawn on the theory that the mere fact that the administratrix had the assets in her hands and had given a receipt for the money which in fact, was not passed to the heirs, was such a breach of duty as that it made the administratrix trustee of a continuing and subsisting trust, but that theory has clearly been demonstrated to be wrong on the authority of the 5th Circuit Court Rep., Lease v. Martha Downey, wherein it was held, that an action by the distributees of a decedent's estate to recover an unpaid balance in the hands of the administrator, is barred by the statute of limitations unless commenced within six years and thirty days from the date of the order of distribution made by the Probate Court. This was an action between daughter and father, where, it was claimed that the father made false statements, and thereby imposed upon her as to the amount due her, and she sued for the additional amount. And likewise, in the recent case of Webster v. American Bible Society, 50 Ohio St., was the same holding as to the operation of the statute in such a case. In other words, the statute of limitations begins to run from such time as the heirs are entitled to receive their distributive shares of the estate and are qualified to bring a suit, upon the theory that while said heirs might have some concurrent equitable rights as against the trustee, yet having a right of action at law, they were entitled to recover a judgment and have execution thereon as against such trustee; that the trust terminated at the time when it was the duty of the trustee to have so discharged that trust under the law, and a failure gave the heirs the right to their judgment. 18 Wall., 493, 509. Clarke v. Boorman's, Ex'rs.

These cases, together with the 7 Johnson Chancery, 90, and other cases cited in these opinions, certainly very clearly establish that the statute of limitations in such cases, where no fraud intervenes, does operate, and that there is no continuing and subsisting trust.

The defense that the decree of the Probate Court approving the final report of the administratrix (reciting the payments to the heirs as per their receipts) had not been set aside, and remains in full force and effect, is not well taken, there being no power in the Probate Court to grant relief, and vacate or modify such judgment.

Johnson, Executor v. Johnson, 26 Ohio St., 357. "The provisions of section 534 of the code of civil procedure, as extended by sec. 542 to Probate Courts, do not confer power upon a Probate Court, in proceedings instituted under sec. 536, to vacate or modify

its own orders previously made in the settlement of the accounts of executors and administrators.''

In Lindsay, 28 Ohio St., 157, it was held that: ''Upon closing his final account in the Probate Court, an amount being due his ward, the guardian induced her to sign receipt for the money as though paid, agreeing to be responsible to her for said amount, with interest. Held: An action may be maintained upon such agreement by the ward, and the sum actually due from the guardian recovered without in any way opening up or reviewing the accounts which had been settled in the Probate Court.''

This was an action between a father and a daughter who had been her guardian, and the opinion of Judge Wright suggested also that such receipts and settlements are a release of the trustees and sureties, although creating individual liability in the person of the trustee.

Judge Wright says:

''To maintain this action, as has been already intimated, it is not necessary at all to interfere with the proceedings of the Probate Court. Its accounts may remain finally settled and not now be disturbed. Considering the case with all the facts before us as set out in the pleadings and bill of exceptions, we may illustrate the views we take by reference to this voucher, and the settlement with the Probate Court shows that it was paid, and the settlement is a final one. The finality, perhaps, is such that it would bar the ward from any proceeding against the guardian as guardian or against his sureties. But suppose the money was not paid, as is admitted in this case; suppose the ward consented to such settlement for the purpose of closing up the accounts and releasing the sureties, the guardian agreeing to become responsible in his individual capacity and agreeing to pay the money, can it be said that an action to enforce that agreement is a re opening of the accounts in the Probate Court? We think not. The action is based upon the finality of that settlement. It is not against the guardian, as such, nor his sureties—it is upon a new and independent contract, the foundation of which is that the accounts are closed, sureties released, and other individual responsibility substituted therefor.''

In 31 Ill Ap., 647, Butler v. Hall, it was held that. the heir and the administrator might use the estate funds in a private business enterprise of the administrator. The money so used was lost, and the administrator became insolvent. Held: That such secret agreement discharged the sureties upon the administrator's bond, on the familiar principle that a secret agreement between the creditor and principal is prejudicial to the surety, and operates to the discharge of the latter from his contract.

50 Mich. 49, Probate Judge v. Abbott, et al. The agreement of the legatee after arriving at age to take the individual note of the executor, and the release receipt in settlement by a minor ratified when she became of age released the executor's sureties, they not being parties to the transaction.

See also 52 Ark., 499, Court v. Edwards.

A more troublesome question is raised upon the claim of Albert Mehner, because that he was a minor, and that the receipt was given by his guardian, E. L. Mehner, and yet it has seemed to me that as between the bondsmen of Mrs. Mehner, and the bondsmen of E. L. Mehner, the latter should suffer rather than the former.

It is clear to one who has heard the proof that what deceit, if any, was practiced in this case, was instigated by E. L. Mehner. Secondly, whatever fraud there was rests upon the purpose of E. L. Mehner to obtain possession himself of this estate through his ability to control the mind of his mother. And thirdly, it is shown that the whole estate was in his hands and under his control, and that it was so in sufficient amount at thetime when he passed this distributive receipt to his mother. That being so, the trust, which he was charged to administer, rather than the one tne mother was charged to administer, should first suffer loss, for he caused her to make breach of her trust duties. That being so, it would seem to me that the receipt which he gave as guardian ought to stand rather than it should not. And, I am not unmindful of the proceeding in the Probate Court upon exceptions filed to this final account filed in 1889, which should have been filed, (and about which there is no proof as to whether any was filed) prior to the fire. When the minor became of age, in May 1882, he had an opportunity to know where his money was. It seems from the proof that he received information from E. L. Mehner, guardian. It was his right to have the money. It was time in 1882 to demand it. He omitted to demand it until 1891, and new demands it of the administratrix, who had closed her accounts through the receipt of his guardian, November 1877, making more than fourteen years that the guardian, and more than nine years that Albert (after his majority) had a right of action, before suit was brought.

The statute of limitations, as founded on the delay to bring suit for more than six years after the right accrued to one competent to sue, makes a good defense as pleaded. If the suit were on a written bond, it would seem that the time would be ten years. This action is not on a written bond.

I am fully aware that some things I have said upon the subject of fraud, and as to the discovery of that fraud, may seem to run counter to some recitals in the decree which was handed up to me in the real estate case, but I did not determine those issues of the real estate case, and I simply put my holding in that case on the ground that Kuhn & Sons were quasi purchasers of the title in the real estate, and as such their equity was better than that of the complainants. Any other unnecessary recitals are the contribution of counsel preparing to decree.

The judgment therefore, will be against

the plaintiffs and for the defendant, the administratrix.

J. J. Glidden, John R. Von Seggern and E. H. Kleinschmidt, attorneys or plaintiffs.

Follett & Kelly, Wilby & Wald and Francis Lampe, attorneys for defendants.