## GRZESK ET AL. *v.* HIBBERD, TRUSTEE.

[No. 18,337.    Filed Nov. 23, 1897.    Rehearing denied Jan. 28, 1898.]

HUSBAND AND WIFE.—*Mortgage of Lands Held by Entireties.—Suretyship.*—A mortgage executed by a husband and wife on lands which were held by them as tenants by entireties, but which had been conveyed to the husband through a trustee, to secure the individual debt of the husband, is but an evasion of the statute forbidding the wife to enter into contracts of suretyship, and void, where such deeds and mortgage were in fact one transaction, notwithstanding the mortgagee stated to the wife prior to the execution of the deed that she must, in order to make the mortgage valid, make an absolute gift of the land to her husband, where there is no evi-

Grzesk *et al.* *v* Hibberd, Trustee.

dence to show that she intended by the deed to make an absolute gift thereof, but that the land was conveyed back to them jointly after the execution of the mortgage.

From the St. Joseph Circuit Court.   *Reversed.*

*Thomas W. Slick* and *F. J. Lewis Meyer*, for appellants.

*Andrew Anderson* and *James DuShane*, for appellee.

McCabe, J.—The appellants sued the appellee to quiet their title to lot 25 in Fowler's subdivision of bank out-lots 85 and 86 in the city of South Bend.   A cross-complaint filed by the defendant sought to foreclose the mortgage against which it was attempted to quiet the plaintiff's title.   A trial of the issues formed resulted in a finding and judgment against the plaintiffs, and a foreclosure of the defendant's mortgage, the court overruling their motion for a new trial.   The correctness of that ruling is the only question presented by the record.

The particular error complained of in the motion for a new trial is that the finding for the defendant is not supported by, and is contrary to the evidence, and also contrary to law.

The uncontradicted evidence shows that appellants are, and have been husband and wife ever since and prior to August 29th, 1887.   That on that date they became the owners of the real estate in question as tenants by entireties; that on October 24th, 1894, appellant, Wladyslaw Grzesk, husband of the other appellant, was indebted to Hill Brothers in the sum of over $800.00.   And afterwards, plaintiffs, as husband and wife, were induced to convey the real estate to a third person, in order that such person should convey it back to the husband alone, for the purpose of enabling the husband and wife to make a mortgage on said real estate to secure the above-mentioned debt of the husband, all of which was accordingly done.   And

Grzesk *et al. v.* Hibberd, Trustee.

the sole question to be determined by the evidence was and is whether the conveyance mentioned by which the title to the real estate mortgaged was attempted to be vested in the husband alone was an independent transaction, in which the sole purpose of the wife was to make a permanent gift of her interest therein to her husband, or were such conveyances a mere contrivance by and between all the parties to evade the statute forbidding a married woman from becoming surety for another? The evidence further shows without contradiction that Wesley Hill, one of the firm of Hill Brothers, in company with the appellee, his attorney, went to the house of the appellants, in South Bend, and made an arrangement with the appellant Agnes Grzesk and her husband to secure the debt of the latter to Hill Brothers which was carried into effect by executing the conveyances and the mortgage already mentioned, which mortgage was to the appellee, Hibberd, as trustee for the Hill Brothers.

It is earnestly insisted that the evidence tending to support the finding for the defendants, considered alone, affords ample support thereto. The strongest and only evidence on the defendant's side is his own testimony and that of one of the Hill brothers. The defendant Hibberd testified as follows: "Q. Do you recollect of going to Grzesk's house along with Mr. Hill? A. Yes, sir. Q. Do you remember at that time of having a talk with Grzesk and his wife, about securing an indebtedness due Hill Brothers? A. Not before Mr. Hill came after me. Q. State * * * what the conversation was * * * from beginning to end. A. * * * The substance was this: She was anxious, and said so, to get this settled up, and have no trouble, and wanted to give security. * * * She said she wanted to secure it, so Mr. Hill would be satisfied. I told her that they held the

Grzesk *et al. v.* Hibberd, Trustee.

property by a joint deed, and that Mr. Hill couldn't take a mortgage on the property the way the title stood, that it would be of no good. I says: 'The only way, Mrs. Grzesk, you can do, if you want to, you can give your interest in the property to your husband. You can do that, and I shall not advise Mr. Hill to take a mortgage unless this is done. There is no compulsion about it. You can suit yourself about that. Use your own judgment about it. If you want to do that, we will take a mortgage. If you do not do that, we will not take a mortgage because, it will not be of any good.' Then she says: 'That is all right; any way to fix it up so it will be satisfactory.' I says: 'In order to do that, it will be necessary to make two deeds. I have a lady in my office, who is a single lady, and she will act as trustee; and I will draw a deed for you and your husband to sign, deeding it to Miss Jennings, and then she will sign a deed deeding it over to your husband, and then it will be his land. Then,' I says, 'we will make the mortgage.' She said, 'go ahead.' That was the substance of the conversation. * * * * * I had the deeds prepared at my office. * * * There was nothing said about conveying it back to the wife after the mortgage was made, or holding it for her benefit. * * * I was acting as attorney for Hill Brothers." On cross-examination by plaintiffs' counsel the witness said: "She didn't tell me she wanted to secure the debt of her husband. * * * She wanted to satisfy Hill Brothers, so that there would be no trouble about it,—her husband would not be troubled. * * * * * I think the first thing that was mentioned was the amount due. * * * * .I told him what the amount was. * * * She said she wanted to fix it up so Mr. Hill would be satisfied. 'Well,' I says, 'you own this property by a joint deed;' and I

says, 'the only way you can do, that I would advise Hill to take as security, is for you to deed it over to your husband. If you want to give it to him absolutely, I will advise Mr. Hill to take a mortgage. If you don't do that, I won't advise him to take a mortgage.' Q. You went up there for that purpose  *  *  * of getting this fixed up so you could advise him to take the security that way? A. If possible, yes sir.  *  * *  * I told her how the title was, and that it would have to be conveyed to him if she wanted to do that to secure the debt.  *  *  * That was the purpose. *  *  * I had the mortgage signed by Grzesk and wife after the deeds were made." Wesley S. Hill testified: "I went down, and got Mr. Hibberd, and went up to the house, and they were all there in the room, and we talked it over with them. Mr. Hibberd told them, in order to give security, as they held their property jointly, it would be necessary for Mrs. Grzesk to deed her property or give it to her husband, as the mortgage would not be worth anything, holding the property jointly, that they couldn't give a mortgage that would be good.  *  *  * She said she would sign the deed anyway, so her husband could give the mortgage."

The undisputed evidence shows, also, that the deed from Grzesk and wife to Miss Jennings, and the deed from Miss Jennings conveying the property back to the husband alone, were executed at the same time, and about the same time the mortgage was made by Grzesk and wife to the appellee Hibberd, as trustee for Hill Brothers to secure the debt of the husband to them. And that both the deeds and the mortgage were taken possession of by appellee, Hibberd, and taken by his agent Miss Jennings, and, under his direction, she delivered all of them to the recorder of the county in his office, and the same were procured

Grzesk *et al.* *v.* Hibberd, Trustee.

to be recorded without Grzesk paying anything for recording any of the deeds.    There was no consideration paid for the conveyance to Miss Jennings and no consideration paid for the conveyance from Miss Jennings to Wladyslaw Grzesk, the husband; and afterwards, on September 30th, 1896, the appellants, Wladyslaw Grzesk and Agnes, his wife, conveyed the premises back to the same Miss Jennings, and she on the same day, at the same time, conveyed the same back to said Agnes Grzesk and Wladyslaw Grzesk, without consideration.

The appellants' contention is that this evidence shows that the mortgage is void, as it is a contract of suretyship on the part of the wife.    It is settled under the statute as to married women that all contracts of suretyship entered into by them are void, no matter who for.    *Vogel* v. *Leichner*, 102 Ind. 55.

The appellants contend, and the appellee concedes, that the law is that a mortgage executed by a husband and wife on real estate held by them, as tenants by entireties, as was the case here, before the conveyances to Miss Jennings, and from her back to the husband, to secure the debt of the husband, being void as to the wife by virtue of the statute forbidding her from entering into contracts of suretyship, it is also void as to the husband.    *Dodge* v. *Kinzy*, 101 Ind. 102-106, and cases cited.

But it is contended that this is not such a contract; that the transaction exhibited in the evidence resulted in vesting the entire title in the husband absolutely; and that he therefore had the right to mortgage his own real estate to secure what is conceded to be his own preexisting debt.    In support of this proposition we are cited to *Long* v. *Crosson*, 119 Ind. 3.    The facts in that case are such as to make an entirely different question than the one arising upon the

Grzesk *et al.* *v.* Hibberd, Trustee.

facts here. There, Mattie Long, wife of James Long, being the owner in her own right of a certain lot in the town of Fowler, in Benton county, executed a deed, in which her husband joined, by which she conveyed the lot to John Dempsey, for the nominal consideration of $1,500.00. Dempsey, on the same day, for a like consideration, conveyed the property to James Long, husband of Mattie Long. There was no consideration actually paid or agreed to be paid for either of the foregoing conveyances, they having been made merely to invest James Long with the title, so that he might secure a loan of $500.00, which he desired to make for his own benefit. Afterwards, on October 17, 1881, Crosson, upon the recommendation and solicitation of Dempsey, made a loan of $500.00 to Long, and took a mortgage as security upon the property owned and conveyed as above, in which both Long and wife joined. Dempsey, who knew of the purpose for which the title had been transferred from Mrs. Long to her husband, furnished Crosson $250.00 of the money thus loaned to Long, and took Crosson's note for that amount. The title had stood some six months in the name of James Long at the time Crosson made the loan, and the evidence showed that he took the mortgage upon the faith of an abstract of title furnished him, and that he had no knowledge that the title had been transferred merely to enable Long to make the loan and to evade the statute which prohibits a married woman from entering into any contract of suretyship. The title had ever since remained in the husband. This court there said: "Upon the facts thus summarized, the court below gave judgment of foreclosure against both the mortgagors. The wife prosecutes this appeal. * * * Conformable to the maxim which declares that whatever is prohibited by law to be done directly cannot legally be effected by

Grzesk *et al.* v. Hibberd, Trustee.

an indirect and circuitous contrivance (Broom Legal Max. 432), it was held in *McCormick, etc., Co.* v. *Scovell, supra* [111 Ind. 551], that where a husband and wife joined in conveying real estate owned by them as tenants by entireties, to a third person, the latter conveying to the husband so as to enable him to mortgage the property to secure an antecedent debt owing by him to another, who knew of the purpose for which the several transfers were made, the deeds and mortgage constituted substantially one transaction and were void as an evasion of the statute which prohibits a married woman from entering into a contract of suretyship.    Whatever device may be resorted to for the purpose of evading the statute, if the person seeking to enforce the contract knew of, or participated in the design, or purposely remained ignorant, courts will deal with the transaction according to its substance, regardless of the form in which it may have been disguised."    But in the case then before the court, inasmuch as the title had been in the husband at the time the mortgage was taken more than six months, and had remained so ever since, notwithstanding more than seven years had elapsed, and that the motgagee had no knowledge of the purpose for which the title had been transferred from Mrs. Long to her husband, it was held that the principles announced in the case of *McCormick, etc., Co.,* v. *Scovell, supra,* did not apply, and the foreclosure ought to be upheld, and it was so adjudged.    But the facts established here by the evidence fall squarely within the principle of *McCormick, etc.,* v. *Scovell, supra.*    The same rule was laid down by this court in *Sohn & Co.* v. *Gantner,* 134 Ind. 31.

The evidence we have quoted, and that most favorable to appellee, shows that the sole purpose of the conveyance of the property from the appellants to

Miss Jennings, and her conveyance back to the husband, was to enable him to make a valid mortgage on the property to secure his individual debt, and that the beneficiaries in that mortgage, as well as the mortgagee, their trustee, knew all about the purpose of the conveyance, and that it was for the sole purpose of evading the statute forbidding the wife to enter into contracts of suretyship.    In fact, they knew that the deeds and mortgage were but one and the same transaction, and that the deeds were as much for their benefit as the mortgage.    Appellee's learned counsel have laid much stress upon the fact that appellee Hibberd told his wife, in the conversation resulting in the conveyances and mortgage, that she must make a gift of the property to her husband, so that it would be his absolutely, or the mortgage would be of no force. But there is no evidence to show that she did intend by the transaction to make her husband the absolute owner of the property; but there is evidence to the contrary, and that is that she and her husband afterward conveyed the property back to the same person that they had before conveyed it to, Miss Jennings, and she at once conveyed it back to them jointly, vesting the title precisely where it was in the start.    But be that as it may, if the only purpose in the conveyances vesting the title in the husband alone was to evade the statute, the transaction fell within the condemnation of the law, and the mortgage was void; and such is the clear purport of the evidence.

Our conclusion is that the finding was contrary to law and the evidence, and hence the court erred in overruling the motion for a new trial.    The judgment is reversed, and the cause remanded, with instructions to grant a new trial, and for further proceedings not inconsistent with this opinion.

Howard, J., took no part in this decision.