BRAGG v. LAMPORT et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

No. 565.

**1. MARRIED WOMEN—CONTRACTS OF SURETYSHIP—ESTOPPEL.**

Under the married woman's statute of Indiana of 1881 (3 Burns' Rev. St. §§ 6960–6964), which makes void contracts of suretyship by a married woman, but provides that she shall be bound by an estoppel in pais, like any other person, a married woman who conveys her realty for the purpose of enabling the grantee to make a mortgage thereon for his own benefit, which he does to a person who has no knowledge of such fact, and accepts the mortgage on the faith of the recorded title, is estopped from asserting the invalidity of the transaction to defeat the mortgage.

**2. SAME—NOTICE TO MORTGAGEE—POSSESSION OF GRANTOR.**

The fact that such a conveyance by a married woman shows on its face that the grantee is a son of the grantor does not charge a subsequent mortgagee from the son with notice of the illegal purpose for which the conveyance was made, nor does the fact that the grantor remained in possession of the property.

**3. SAME.**

The reconveyance of the property by the son to his mother after his execution of the mortgage thereon, but before its final acceptance by the mortgagee and the payment of the consideration, of which reconveyance the mortgagee had no actual notice, although it was recorded, did not charge her with such knowledge of the facts as to relieve the grantor from the estoppel created by clothing her son with apparent ownership.

**4. SAME.**

The deed of reconveyance being made expressly subject to the mortgage which was recited therein, and which the grantee assumed and agreed to pay as a part of the consideration, did not operate to revest the title in the grantee free from the unaccepted mortgage; the assumption clause being valid and binding, at least to the extent of recognizing the mortgage as an existing incumbrance.

**5. MORTGAGES—TIME OF TAKING EFFECT—RELATION.**

A mortgage signed, acknowledged, and delivered to an agent of the mortgagee, on its subsequent acceptance by the mortgagee takes effect by relation as of the date of such delivery, as against an intervening conveyance, where the equities of the parties require such application of the doctrine of relation.

Appeal from the Circuit Court of the United States for the District of Indiana.

Byron K. Elliott, for appellant.

John W. Kern and John F. McHugh, for appellees.

Before BROWN, Circuit Justice, and WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge. This case was submitted on the briefs, without oral argument. The appeal is by Margaret J. Bragg, married, of Lebanon, Ind., from a decree of foreclosure of a mortgage on real estate in Lebanon conveyed to her by the mortgagor, Joseph G. Bragg, who is her son, by a deed of conveyance in the statutory short form of warranty deed, executed on the 15th and recorded on the 18th of March, 1889. The conveyance, by the terms of the deed, is "subject to a mortgage of $3,000, which the grantee assumes and agrees to pay, as so much of the purchase money." The mortgage was given by Joseph G. Bragg to secure his promissory note of even

date for $3,000 to Adeline R. Lamport, of New York City, to whose rights on her death her husband, the appellee, succeeded. It bore date the 8th, was acknowledged and delivered to the agent of the mortgagee, residing at Lafayette, Ind., on the 11th, and was recorded on the 25th of March, 1889, but, as the evidence clearly shows, was not accepted and the money that it was given to secure paid over before the last-named date, being held meanwhile to await an examination by counsel of the abstract of title. In her answer, the substance of which was anticipated and denied or met by matter of estoppel alleged in the bill, the appellant set up that the mortgaged property was and long had been hers; that on January 19, 1889, she and her husband, James Bragg, executed a conveyance of it to Joseph G. Bragg, described in the deed as her son, to enable him to procure a loan by mortgaging it; that he paid and she received no consideration for the conveyance; and that an agent of the mortgagee suggested and instigated the execution of the conveyance for the purpose stated. One of the averments of the answer, it is to be observed, is that the mortgage "was executed on the 8th day of March, 1889," and there is no allegation of the fact, now insisted upon as controlling, that the loan was not consummated and the mortgage accepted until after the execution and recording of the deed of reconveyance; the theory of the defense pleaded being that the conveyance by the appellant to her son was, and was known to the mortgagee to be, an attempt to evade the statute of the state, then and still in force, which forbids a contract of suretyship by a married woman. Each of the deeds (that conveying and that reconveying the property) purported to be "for the sum of ten thousand dollars," but, other than as stated, there was no consideration for either, and the appellant received no part of the money obtained upon the mortgage.

The legislation of Indiana touching the disabilities of married women, and their powers to acquire, own, and dispose of property and to make contracts, ending with the act of April 16, 1881 (Rev. St. 1881, §§ 5115–5119; 3 Burns' Rev. St. §§ 6960–6964), is reviewed and explained in the opinion of Judge Mitchell in Vogel v. Leichner, 102 Ind. 55, 1 N. E. 554. Numerous earlier and later decisions upon one phase or another of the subject have been made, and the last cited (Grzesk v. Hibberd, 149 Ind. 354, 48 N. E. 361) is claimed to be much like the present case; but the resemblance is only in particular features. In other respects there is a wide difference. The statute of 1881, after declaring abolished all legal disabilities of married women, except as therein otherwise provided, says:

"A married woman may take, acquire and hold property, real and personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, together with all the rents, issues, incomes, and profits thereof, shall be and remain her own separate property, and under her control, the same as if she were unmarried."

It also gives her complete power of disposition of her personal property, but forbids her to "enter into any executory contract to sell or convey or mortgage" or to "convey or mortgage" her real estate, "unless her husband join in such contract, conveyance or

mortgage; provided, however, that she shall be bound by an estoppel in pais, like any other person"; and finally, so far as relevant here, she "shall not enter into any contract of suretyship, whether as indorser, guarantor, or in any other manner; and such contract as to her shall be void." ,

Under this inhibition against contracts of suretyship, it is settled by numerous decisions that a married woman may not part with her title to enable the grantee to mortgage the property to secure a loan not intended for the benefit of herself or her property, and that, if the purpose of a conveyance so made be known to the proposed mortgagee, the mortgage will be void. See cases cited supra. But in those and other cases cited it is implied, and in Long v. Crosson, 119 Ind. 3, 21 N. E. 450, it was decided, that equity will not interfere to annul a mortgage which had been accepted by the mortgagee on the faith of the recorded title, without notice that the disputed conveyance had been made by a married woman for the purpose of evading the statute. In the opinion in that case it was said that having purposely transferred her title to her husband with the intention that he should thereafter, as he might find opportunity, mortgage it as his own property for his own benefit, "as against one who subsequently made the anticipated loan, and who is not shown by clear and satisfactory evidence to have had knowledge that the conveyances were a mere contrivance to evade the statute, she is now estopped from asserting that the transaction was of a character different from what it appeared to be." "The statute," it was said in Vogel v. Leichner, supra, "affords ample means for the protection of the person who becomes a creditor. It provides that she shall be subject to an estoppel in pais, as any other person. This does not mean that she is to be estopped by the mere form of the contract, without more. She is to be estopped as any other person, by causing the lender to believe that a state of facts exists which does not, or that the transaction is one thing, while in fact it is another." The evidence in this record establishes such an estoppel against the appellant, unless that conclusion is averted by the execution and registration of the deed of reconveyance of the property to her before the acceptance of the mortgage. That the loan was made and the mortgage accepted without notice to the mortgagee or her agent in the transaction of any infirmity in the title of the mortgagor is beyond doubt, and is not understood to be seriously questioned in the briefs. ,

Comment is made on the fact that it appeared on the face of the appellant's deed that she was conveying to a son, but, if of any significance, that circumstance tended to establish rather than to impeach the conveyance. One unacquainted with legal refinements might well have supposed that what the mother had done for a son —in this instance an only child—she might be deemed to have done for herself. In some of the decisions it is implied that, if she had intended an outright gift of the property, it was competent for her to make the conveyance, no matter what her motive may have been.

It is said that the decision in Long v. Crosson, supra, does not touch the merits of the controversy, for five reasons:

"(1) Because here there was no mortgage when the appellant's deed was recorded. (2) Because the appellant's deed was of record before there was even a contract to make a loan,—certainly before any money was paid or any mortgage accepted. (3) Because there was no trick or artifice on the part of the appellant, for she was in actual possession, and she placed her deed on record before any mortgage was executed. (4) Because the mortgagee had notice by the records and from possession, before she parted with any money, that the appellant owned the property. (5) Because the mortgagee's agent at Lebanon had full knowledge of all the facts."

By "appellant's deed" in the first and second propositions and "her deed" in the third are understood to be meant the deed of reconveyance. Of the fifth proposition it is enough to say it is not true in fact. The mortgagee had no agent at Lebanon, and the supposed agent, who in fact represented the mortgagor in the transaction, denied the knowledge attributed to him. The continued possession of the appellant was of no significance. A grantor's possession is not notice of any right or claim of right inconsistent with his recorded deed. Tuttle v. Churchman, 74 Ind. 311, 314, and cases cited. This point eliminated, the several propositions are resolved into one, and present simply the question of the effect of the execution and recording of the deed of reconveyance upon the estoppel created by the execution and recording of the first deed. That was an equitable estoppel, the appellant being responsible for the false appearance of title in her son. What is there in the reconveyance to affect that appearance, or to give notice of the truth? Absolutely nothing. Besides, it is to be observed, the loan was consummated and the mortgage accepted without knowledge on the part of the mortgagee or her agent of the existence of the reconveyance. The record, of course, constituted constructive notice. Such notice is a creature of law, and cannot be denied its legitimate consequences; but it has in its composition no ingredient or atom of equity, and, as we suppose, can never be the foundation or support for an equitable estoppel. If it could, it is not difficult to see that the laws which give the force of constructive notice to the registration of deeds or other instruments, instead of affording the protection intended, may be easily turned, under supposable conditions, into a snare. This record supplies an illustration. The appellant gave her son the appearance of ownership in order to enable him to procure this loan. If the mortgagee had known the purpose for which she conveyed, she could say the deed was made in violation of law and is void; but, having given the mortgagee no notice that the facts were different from what they seemed to be, she is estopped to deny the acts by which she created that appearance; and could estoppel be more righteous? She could have escaped that result only by giving to the one about to act on the faith of her deed actual notice of its invalidity. Estoppel may be destroyed by estoppel, but, if the first is equitable, the other, if not by contract, must be equitable too. In this case Adeline Lamport accepted the mortgage and parted with her money in reliance upon the record, and upon actual knowledge of the deed of the appellant to the mortgagor, and without notice that its validity was for any reason questionable. As against her, therefore, its validity remained beyond challenge by the appellant, notwithstanding the

execution and registration of the reconveyance, of which she had no actual knowledge. As to her, or the appellee, who has her rights, the case is the same as if the conveyance by the appellant to her son was valid from the beginning, and the reconveyance an independent transaction, executed in pursuance of a new and distinct agreement, or, to put it in another way, as if by the deed of her son she first became the holder of the title.

This brings us to the ultimate question, which from the appellant's standpoint is a purely legal one, but of a character to be controlled by equitable considerations. It is whether the conveyance to her, executed as it was before the acceptance of the mortgage, gave her an unincumbered title. That would have been the effect, perhaps, but for the fact that the conveyance was made subject to the mortgage, which, by the terms of the deed, she assumed and agreed to pay, as part of the purchase price. It is said that she had no power to make the contract of assumption; but that does not seem to be so. By force of the statute of 1881 she was relieved of all disabilities, except as stated, and in the acquisition of property she had a right to assume personal obligations for the price. See Rinn v. Rhodes, 93 Ind. 389; Chandler v. Spencer, 109 Ind. 553, 10 N. E. 577; Berridge v. Banks, 125 Ind. 561, 25 N. E. 805. But, if the assumption as a personal contract was invalid, it was certainly competent for her to acquire or accept the title subject to an incumbrance by mortgage or otherwise; and the recital in the deed to the effect that the conveyance was made subject to an incumbrance as a part of the purchase price binds her as a recital of fact, if not as a covenant to pay the incumbrance. If she could not charge herself with the mortgage debt, she could accept the property subject to the incumbrance; and to that extent, at least, the transaction was as if neither party had been under legal disability. If the covenant was one which she had power to make, the suggestion that it was without consideration can be established only by connecting this conveyance with that of January 19th, and showing its lack of consideration and its execution for an unlawful purpose; but that, as we have seen, is forbidden by the estoppel. On the face of the deed the consideration for the covenant to assume is expressly stated, and, the mortgagee having had only constructive notice of the existence and contents of the deed, it is not competent for the present purpose to show aliunde that the character of the instrument was different from what it seemed to be, or that the facts recited were not true. Assuming that the covenant was valid, she did not thereby bind herself, as surety, to pay the debt of another. She made the debt her own, and the original debtor became, in equity, only secondarily liable.

The final contention is that when the appellant received the deed of March 15th there was no mortgage in existence, and that the subsequent acceptance of the mortgage cannot be carried back by relation to the prior date of signing and acknowledgment, so as to cut off the intervening rights acquired by the appellant. The plain answer is that she acquired no right which was not understood and expressly declared to be subject to the mortgage as a subsisting lien. There can therefore be no injustice to her if the lien be made good

by relation. Before the execution of her deed the mortgage had been delivered to the agent of the mortgagee. If it was a conditional delivery, or a delivery in escrow, the doctrine applies that on final delivery it became operative by relation from the date of the first delivery. The cases in which the doctrine has been defined and applied are numerous. The following are some of the Indiana cases: Goodsell v. Stinson, 7 Blackf. 437; Dearmond v. Dearmond, 10 Ind. 191; McFadden v. Ross, 14 Ind. App. 312, 41 N. E. 607; Cloud v. Moorman, 18 Ind. 40; Woodbury v. Fisher, 20 Ind. 387; Felton v. Smith, 84 Ind. 485; Jones v. Loveless, 99 Ind. 318; Owen v. Williams, 114 Ind. 179, 15 N. E. 678; Smiley v. Smiley, 114 Ind. 258, 16 N. E. 585; Goodpaster v. Leathers, 123 Ind. 121, 23 N. E. 1090; Farmers' Loan & Trust Co. v. Canada & St. L. Ry. Co., 127 Ind. 250, 26 N. E. 784.

In Felton v. Smith it was said:

"The fiction of relation is allowed force when equity requires that the last of a series of acts shall be carried back to the first or original act for the purpose of shutting out intervening claims. In no case is it allowed force where the party insisting upon it is endeavoring to secure an unconscionable result."

In Smiley v. Smiley a deed of a father to his children, put in escrow for delivery after his death, was held good by relation against a second wife who before the marriage was informed of the deed. The general rule is everywhere recognized that the doctrine shall not be so applied as to do wrong to strangers; but the appellant, instead of being a stranger to this mortgage, came into privity with the mortgagor by accepting from him a conveyance of the incumbered title. She can no more dispute the mortgage than could her grantor, the maker of it. To quote from the opinion in Leiter v. Pike, 127 Ill. 287, 326, 20 N. E. 31:

"A deed placed in escrow conveys nothing until the conditions are performed. 'But,' says Shep. Touch. (6th Ed.) pp. 57, 59, 'when the conditions are performed, and the deed is delivered over, then the deed shall take as much effect as if it were delivered immediately to the party to whom it is made, and no act of God or man can hinder or prevent this effect then.' And it needs no authority to prove that that which the grantor himself cannot do, in this respect, he canot empower his grantee to do, for his grantee can but occupy his position; assuming, of course, that his grantee is chargeable with notice of the deed in escrow."

See, also, McDonald v. Huff, 77 Cal. 279, 19 Pac. 499; Jacobus v. Insurance Co., 27 N. J. Eq. 604.

The appellant at no step of the transaction disclosed was deceived, or acted without full knowledge of the facts affecting her interests. She should not be allowed now to convert her own acts and conduct, in which there was certainly no evil intention at the time, into agencies of deceit and of successful imposition upon another, who acted with innocent faith in appearances for which the appellant was responsible. The decree below is affirmed.